515 So.2d 1351 (1987)
SANDREW CONSTRUCTION and Royal Insurance Group, Appellants,
v.
Daniel D. DeFOURNY, Appellee.
No. 87-179.
District Court of Appeal of Florida, Second District.
November 25, 1987.
*1352 Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for appellants.
T. Rankin Terry, Jr. of Terry & Terry, Fort Myers, for appellee.
PER CURIAM.
Sandrew Construction, Inc. (Sandrew) and its workmen's compensation carrier, Royal Insurance Group (carrier), appeal a final order striking the carrier's lien against appellee, Daniel C. DeFourny. We reverse.
On October 5, 1981, DeFourny was injured while in the employ of Sandrew. Trusses manufactured by Naples Lumber & Supply Company, Inc. (Naples Lumber) were being lifted onto a building by a crane being operated on behalf of Shirley A. Nix and Ledford U. Nix, d/b/a Nix Crane Service, when a truss broke apart and fell on DeFourny. DeFourny's workmen's compensation claim against Sandrew and its carrier was settled by the carrier. Payments by the carrier have exceeded $30,000 and may be more as the medical expenses remain open pursuant to section 440.20(12)(a), Florida Statutes (1981). After DeFourny filed suit against Naples Lumber and the Nixes, the carrier filed a notice of lien pursuant to section 440.39(3)(a), Florida Statutes (1981), upon any recovery DeFourny may ultimately receive in the action.
As the case was approaching trial, Naples Lumber settled with DeFourny for $7500. From these settlement proceeds, $750 was awarded to Sandrew and its carrier in satisfaction of the section 440.39 lien. The order distributing the proceeds specifically provided that the $750 should extinguish only the section 440.39 lien as to the $7500 collected from Naples Lumber and that Sandrew and its carrier retained "a lien on any further proceeds that may be recovered in this cause, the amount of which will be determined at that time."
During the pendency of the suit, the Nixes' insurer, Iowa National Mutual Insurance Company (Iowa National), became insolvent and thus came under the care of the Florida Insurance Guaranty Association (FIGA) in accordance with the provisions of chapter 631, Florida Statutes (1981). As potential creditors of Iowa National, both DeFourny and the carrier filed claims with FIGA pursuant to section 631.181, Florida Statutes (1981). FIGA denied the carrier's claim as not being a "covered claim" as defined by section 631.54(3), Florida Statutes (1981). DeFourny subsequently moved to set aside the carrier's section 440.39 lien. The trial court granted DeFourny's motion and entered a final judgment striking the carrier's lien after concluding that "[t]o allow the lien for worker's compensaion (sic) benefits paid under Florida Statute § 440 to stand would defeat the statutory scheme of the Florida Insurance Guaranty Association law, Chapter 631.50 through 631.70, Florida Statutes, to *1353 prevent FIGA funds from being used to pay subrogation claims." This timely appeal followed.
Sandrew and its carrier contend that the trial court erred in striking the lien because it is a claim against DeFourny and any funds he may ultimately recover in the suit, not a subrogation claim, or any other type claim, against FIGA. We agree.
Generally technical words or phrases which have acquired a peculiar and appropriate meaning in law will be interpreted according to their fixed legal sense. See Davis v. Strople, 39 So.2d 468 (Fla. 1949). In this regard, a lien is a qualified right or a proprietary interest which may be exercised over the property of another. City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513 (1935). Subrogation, on the other hand, allows a party required to pay a legal obligation owed by another to step into the shoes of the injured party and assert the latter's original claim against the wrongdoer. See Blue Cross & Blue Shield, Inc. v. Ryder Truck Rental, Inc., 472 So.2d 1373 (Fla. 3d DCA 1985), rev'd on other grounds, 498 So.2d 423 (Fla. 1986). With these two definitions in mind, we now examine the provisions of section 440.39.
Under certain circumstances, an employer or its carrier is permitted to institute suit against a third party tortfeasor in its own name. See § 440.39(4)(a), Fla. Stat. (1981). Had Sandrew or the carrier filed suit against the Nixes under this provision, any claim they would have had against the Nixes' insurer would have been properly classified as a subrogation claim. Neither the carrier nor the employer, however, brought suit against the third party tortfeasors, and upon DeFourny's filing suit against the third party tortfeasors, Sandrew and its carrier had no right of subrogation. The carrier exercised the only right it had under section 440.39 by filing its notice of payment of compensation and medical benefits. Section 440.39(3)(a) provides that this notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be the carrier's pro rata share. We find, therefore, that any claim the carrier has against funds which DeFourny may ultimately recover in the suit is a lien and not a subrogation claim.
Furthermore, a statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. Deltona Corp. v. Florida Public Service Commission, 220 So.2d 905 (Fla. 1969). Since the clear legislative intent behind the section 440.39(3)(a) lien is to avoid a double recovery, we see no reason why the definition of "covered claim" in section 631.54(3) and the prohibition against subrogation claims contained therein should operate to nullify that intent. Here, if DeFourny is ultimately able to prove that the Nixes are liable to him to the extent of their policy with Iowa National ($300,000), then FIGA will award him the $300,000 in damages. Should the trial court's order striking the carrier's lien be allowed to stand, DeFourny would stand to receive a double recovery to the extent that he has already received payments from the carrier.
Finally, in construing two statutes courts have a duty, whenever possible, to preserve the force of both without destroying their evident intent. See Markham v. Blount, 175 So.2d 526 (Fla. 1965). Since we have determined that the definition of "covered claims" in section 631.54(3) applies to claims filed pursuant to the provisions of chapter 631 and not to workmen's compensation liens filed pursuant to section 440.39(3), both statutes can be given effect without destroying the evident intent of either statute. Only after DeFourny has established the Nixes' liability and collected from FIGA must the trial court determine the pro rata share, if any, of DeFourny's award that the carrier is to receive. See § 440.39(3)(a). It is at that time that the court may properly determine the extent, if any, to which the carrier's lien should apply against DeFourny's recovery. To strike the lien at this stage of the proceedings *1354 would be premature as the lien is neither a subrogation claim nor a claim of any other type filed against the receiver of the insolvent insurer under the provisions of chapter 631.
We, accordingly, hold that although the prohibition against subrogation recoveries contained in section 631.54(3) justified FIGA's denial of the carrier's claim filed directly with FIGA pursuant to section 631.181, the prohibition cannot properly be applied to justify striking the carrier's lien filed pursuant to section 440.39(3)(a). We, therefore, reverse the trial court's order striking the carrier's lien and remand with instructions to reinstate the lien pending the final outcome of DeFourny's cause of action against the Nixes.
Reversed and remanded with instructions.
CAMPBELL, A.C.J., and SCHOONOVER and HALL, JJ., concur.