823 P.2d 1347

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable James McDougall a judge thereof, Respondent Judge,

JUVENILE SUBJECT TO MARICOPA COUNTY JUVENILE ACTION NO. J–117523, Real Party in Interest.

No. 1 CA–SA 90–255.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 24, 1991.

Review Denied Feb. 19, 1992.

Richard M. Romley, Maricopa County Atty. by Deanie Reh, Deputy County Atty., Phoenix, for petitioner.

Henry J. Florence, Ltd. by Sherry Bell, Phoenix, for real party in interest.

Robert K. Corbin, Atty. Gen. by Bonnie E. Elber, Asst. Atty. Gen., Phoenix, for respondent Judge.

## OPINION

FIDEL, Presiding Judge.

Is the juvenile court bound to transfer a juvenile for criminal prosecution as an adult when the state and the juvenile have stipulated, as part of a plea agreement, that such a transfer should occur? Or does the juvenile court have the responsi-bility, independent of the parties' agreement, to determine whether a transfer serves the best interests of the juvenile and the state?

These questions are presented in this special action, brought by the state, to challenge the juvenile court's refusal to transfer the juvenile (hereinafter "J.") for prosecution as an adult. When the petition was presented, we accepted jurisdiction, denied relief, and advised the parties that this opinion would follow.

## HISTORY

On June 1, 1990, J. and other juveniles surrounded and taunted an older, intoxicated woman. As the confrontation proceeded, J. shoved the woman to the sidewalk, where she struck her head and died. J. was six days short of his seventeenth birthday at the time.

The state charged J. with second degree murder and moved that he be transferred to adult court. J. and the state later entered an agreement that J. would waive a juvenile court hearing on the issue of transfer and plead as an adult in a criminal division of the superior court to a charge of nondangerous manslaughter. The juvenile court, however, refused to accept J.'s waiver of a transfer hearing and insisted that the question of a transfer be left to the juvenile court's discretion, independent of the plea agreement.

By the time of the transfer hearing, J. was seventeen years and four months old, and the state submitted evidence that the possibility of rehabilitation before his eighteenth birthday was slim. At least one expert, however, found a prospect for rehabilitation; and in a detailed minute entry order, which we quote at length below, the court found that it would not serve the best interests of society or of J. to order his transfer to adult court. Rather, the court found the possibility of rehabilitation under the juvenile court system sufficient that it ought to be pursued.

The state appealed the juvenile court's ruling, but, recognizing a question whether this court had jurisdiction to consider such

an appeal, brought this simultaneous petition for special action.

## JURISDICTION

■ We have accepted jurisdiction of this matter as a special action because we lack jurisdiction to hear it as an appeal.[1] Ariz.Rev.Stat.Ann. § 8–236(A) and Rule 24(a) of the Arizona Rules of Procedure for the Juvenile Court authorize an appeal only "from a final order of the juvenile court." The delinquency proceeding in which the transfer request was filed was still pending before the juvenile court when the special action came our way. The juvenile court's order denying the state's transfer request did not finally dispose of the delinquency proceeding and was not a "final order of the juvenile court." *Cf. In re Appeal in Maricopa County Juvenile Action No. J–74222,* 20 Ariz.App. 570, 571, 514 P.2d 741, 742 (1973) (in delinquency matter, "final order" resolves all issues including disposition). To await final disposition of delinquency proceedings, however, would preclude an adequate remedy if the refusal to transfer were erroneous. Thus, this matter is appropriate for special action jurisdiction.

## WAIVER OF TRANSFER HEARING

The state acknowledges the juvenile court's authority to determine whether J.'s waiver of a transfer hearing was knowingly, intelligently, and voluntarily made. The state argues, however, that the juvenile court had no authority to substitute its judgment for that of the parties on the question whether the transfer should occur.

The state relies for this proposition upon *State v. Superior Court of Pima County,* 7 Ariz.App. 170, 436 P.2d 948 (1968), a case far different than this. There, a juvenile pled guilty to felony charges and reached the brink of sentencing as an adult before revealing his true age. The trial court then granted the juvenile's motion to quash the information, and Division Two of this court reversed on appeal, holding that "a defendant may waive his right to question the jurisdiction of the court on the grounds of his minority when he fails to file a motion to quash the information before pleading thereto." *Id.* at 176, 436 P.2d at 954.

Division Two categorized the juvenile court's original jurisdiction over questions of transfer as a matter of jurisdiction over the person, not over the subject matter. *Id.* at 175, 436 P.2d at 953. We need neither accept nor reject that categorization in this case to hold that here the parties could not divest the juvenile court of its responsibility to decide the transfer question. As the court in *State v. Superior Court of Pima County* explained, a "factor to be weighed is the stage of the proceedings at which the question is raised." *Id.* at 176, 436 P.2d at 954. There, the juvenile had concealed his age, the juvenile court had been given no opportunity to consider a transfer, and the issue was whether its failure to do so negated proceedings that had advanced to the stage of sentencing in criminal court. Here, by contrast, the original jurisdiction of the juvenile court has been properly invoked by parties seeking that court's transfer order, and the very different issue is whether the parties, by stipulation, can convert such an order from a discretionary to a ministerial act. We find multiple authorities that preclude such abridgment of the juvenile court's discretion.

Foremost among these authorities is article VI, § 15, of our state constitution, which explicitly submits the transfer decision to the discretion of a juvenile judge:

The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of crime, under the age of eighteen years. The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any

---

**1.** The state's direct appeal, designated 1 CA–CV 90–038, was dismissed by order of this court on November 20, 1990.

criminal prosecution of such children, *and may, in their discretion,* suspend criminal prosecution of such children. The powers of the judges to control such children shall be as provided by law.

Ariz. Const., art. VI, § 15 (emphasis added).

The discretionary element in the transfer decision also has been described by the Arizona Supreme Court:

Under the law in Arizona, until the juvenile court, which has exclusive jurisdiction of all delinquent children or children accused of crime, has considered the matter and decided that the particular individual is not one who will benefit from its special treatment, a child offender remains in the juvenile jurisdiction.

*State v. Shaw,* 93 Ariz. 40, 47, 378 P.2d 487, 491 (1963) (en banc) (footnote omitted); *see also McBeth v. Rose,* 111 Ariz. 399, 403, 531 P.2d 156, 160 (1975) ("Neither [the petitioner] nor any person under the age of eighteen may be prosecuted criminally unless, after hearing, the juvenile court transfers the matter to the adult side of the law for criminal prosecution.").

The responsibility of the juvenile court to exercise an independent judgment in transfer matters was reinforced by our supreme court's adoption in 1984 of amended Rules 12 and 14 of the Rules of Procedure for the Juvenile Court: Rule 12 provides that the county prosecutor may *request* that the juvenile court waive jurisdiction. Ariz. R.Juv.P. 12. Rule 14 mandates that "the court *shall* ... determine whether the public safety or interest would best be served by the transfer of the child...." Ariz. R.Juv.P. 14 (emphasis added).

Rule 14 also catalogues the factors that "the court *shall* consider" before any transfer is effected. *Id.* (emphasis added). These factors include "the sophistication and maturity of the child"; "the child's physical, mental, and emotional condition"; "the prospects for adequate protection of the public"; and "the likelihood of reasonable rehabilitation of the child." *Id.* Nowhere do the Rules suggest that such a determination by the court is optional, or that the parties may foreclose the juvenile

court's evaluation through their independent agreement.

■ We conclude that the juvenile court properly treated the transfer decision as one entrusted to its independent discretion by Arizona's constitution, case law, and rules of court, and that it properly treated the agreement of the parties as ineffective to divest it of such discretion.

## ABUSE OF DISCRETION

■ The state next argues that, even if the juvenile court properly refused to entertain a waiver of the transfer hearing, the court abused its discretion by denying a transfer following the hearing in this case. The state cites J.'s age, the short remaining time available for rehabilitative efforts by the juvenile court, and the severity of J.'s crime as factors, among others, mandating a transfer for prosecution as an adult.

These arguments are best answered by setting forth the juvenile court's thoughtful explanation of its ruling denying transfer:

The Court has carefully considered all the testimony and evidence presented in light of the factors set forth in Rule 14(c). Because of the consequences of the juvenile's actions—the death of the victim—the Court's decision was a very difficult one to reach.

The Court's decision in a transfer case must be based on whether the public's safety or interest is best served by a transfer of the juvenile to the adult court for criminal prosecution. There is no question that the crime which the juvenile is accused of committing is of a serious nature. It was committed in an aggressive manner and it resulted in the victim's death. However, the offense appears to have been more the result of an extreme lack of good judgment than the result of an intent to *cause serious physical harm or death to* the individual involved.

Were this Court convinced that it is dealing with a highly antisocial, aggressive and violent individual who represents ex-

treme danger to society in general, the Court would not hesitate to transfer this juvenile. The Court recognizes that an argument could be made that this juvenile is such an individual. However, the Court does not believe that the facts support such a conclusion.

The psychological report on this juvenile states that the juvenile "does not present directly as an overtly aggressive or blatantly antisocial individual." Dr. Buckley suggests that the juvenile is subject to being provoked into acting out by peers in a group setting where good judgment often evaporates. In addition, when under stress the chances of his acting out in a manner that shows poor judgment is increased. Dr. Buckley states that the juvenile's association with gang members, "plus the juvenile's tendency to accelerate his behavior under stress, plus his need to get out and prove himself to peers, resulted in the lapses in judgment that are noted in the record." Dr. Buckley concludes his psychological report by stating:

"With intensive programming, which may require a period of incarceration, there is a reasonable possibility that the juvenile can be rehabilitated before his 18th birthday. This is based on the finding of no major psychiatric disturbance, no blatant antisocial orientation, and no chronic, ingrained pattern of aggression toward others. To achieve the goal of rehabilitation, however, intensive measures will be necessary.

In addition to working on his self-esteem, the juvenile needs to work on his judgment, his decision making regarding who he associates with, and in general getting to know himself, how he behaves and when the wiser choice is to remove himself from a situation.

Finally, the juvenile's attitude is one of some remorse and fear which is totally appropriate. He does seem open to intervention and not significantly resistant."

It is in the public's safety and interest that this person be rehabilitated so that this type of offense is not likely to occur again. This Court believes from the evidence presented that this rehabilitation is more likely to take place in the juvenile system than in the adult system.

If the Court were to transfer the juvenile to the adult court and he were convicted of Second Degree Murder, the juvenile would have to serve between 10 to 20 years in prison. This Court does not believe that lengthy incarceration without psychological treatment will do anything for this young man or for society, other than turn him into someone who truly has the potential of intentionally causing harm to others. If the juvenile were allowed to plead to a lesser charge, one permitting him to be placed on probation, the juvenile would probably spend six months to one year in the County Jail and serve a long period of probation. This would provide a better hope of meeting the needs of the public than a lengthy prison term but there still would be no assurance that the juvenile would receive the psychological services needed.

On the other hand, if the juvenile is retained in the juvenile system, he would likely be committed to the State Department of Juvenile Corrections. Staff at SDJC have indicated that the juvenile would not be able to complete the Violent Offender's Program prior to his eighteenth birthday. However, considering the juvenile's psychological profile and his referral history, the Court is not certain that he necessarily needs the Violent Offender's Program for successful rehabilitation. The psychologist's report identifies that the juvenile needs intensive work on self-esteem, use of good judgment and decision-making regarding his associates. The psychological report did not identify aggressiveness or assaultiveness as a significant problem. If placed with the State Department of Juvenile Corrections, the juvenile could receive intensive group and individual counseling in the areas identified, which is precisely what the doctor prescribes as needed for this juvenile's rehabilitation.

The juvenile appears to have good support from his family and his friends who are not involved in local gangs. His

**344**

present detention is the first time he has lost freedom as the result of his actions. He has been cooperative, appears remorseful and appears to have realized that his association with gang members has put him in this position to begin with.

The juvenile's association with members of the Southside Posse Gang does cause this Court great concern and has caused this Court to hesitate in this decision. However, the Court believes, from the testimony and evidence presented, that the juvenile was involved more as a periodic associate of the gang members, rather than as an active and committed member of a street gang. His gang associates have completely abandoned him at this point and the Court believes that the juvenile has finally seen his former associates for what they are worth.

The juvenile's referral and complaint history is not lengthy, nor is it serious, and it certainly did not foretell the present offense. It does concern the Court that, after being referred on this offense, he was referred again for an offense in which he was involved in an assault involving his gang associations. However, the county attorney declined to prosecute the referral as there was no reasonable likelihood of conviction because of the practical and/or legal impediments.

In summary this case has been a difficult one to decide. However, after weighing all the factors involved the Court finds that the state has failed to prove that the public's safety or interest would best be served by transfer of the juvenile to the adult system for criminal prosecution.

The juvenile court's explanation reveals the difficulty of the choice the court was called upon to make, one that required insight and instinct as much as learning, and one that the court might well have decided either way. The Court of Appeals does not sit to second-guess the tough discretionary calls of front line decision makers in the trial courts. The juvenile court carefully considered the evidence for and against transfer. Its decision was rationally grounded in the evidence and merits our deference on review.

## CONCLUSION

For the reasons stated, we have accepted jurisdiction but denied relief.

KLEINSCHMIDT and EHRLICH, JJ., concur.