904 P.2d 1286

**STATE of Arizona, ex rel. Stephen G. UDALL, Apache County Attorney, Petitioner,**

v.

**SUPERIOR COURT for the State of Arizona, In and For the COUNTY OF APACHE, the Honorable Michael C. Nelson, a judge thereof, Respondent Judge,**

**MINOR IN APACHE COUNTY JUVENILE ACTION NUMBER JV–95–036, Real Party in Interest.**

No. 1 CA–SA 95–0117.

Court of Appeals of Arizona, Division 1, Department B.

June 13, 1995.

Review Denied Oct. 24, 1995.*

---

* Zlaket, of the Supreme Court, voted to grant the petition for review.

Stephen G. Udall, Apache County Atty. by Michael G. Goimarac, Deputy County Atty., St. Johns, for petitioner.

Donna J. Grimsley, Concho, and Britt Hanson, Eagar, for juvenile.

## OPINION

WEISBERG, Presiding Judge.

The state has filed this petition for special action seeking review of the trial court's grant of a protective order which prohibited discovery of the medical records of a juvenile charged with first degree murder. Because we conclude that the records are not protected by the physician-patient privilege, we accept jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL HISTORY

On March 24, 1995, the juvenile gave birth to a full term infant in the bathroom of a friend's home. The friend discovered them soon thereafter and noticed that the baby was breathing. The juvenile told the friend that she did not want the baby and wanted the friend to help her "get rid of it." The friend then left the bathroom to contact her mother, who was not at home. When the mother arrived, she found the baby dead. Against the juvenile's protests, paramedics were called who transported her to the hospital.

At the hospital, the juvenile was examined by Dr. Gregory C. Moran, an obstetrician. A member of the hospital staff then contacted the sheriff's office. An autopsy of the infant revealed evidence of blunt injuries to the

head, neck, and trunk, as well as evidence of asphyxial injury. The infant's death was attributed to unexplained trauma.

The juvenile was charged with first degree murder and, after a hearing, was detained by the court. Prior to a scheduled transfer hearing, the state requested the production of the medical records of Dr. Moran and the hospital. The juvenile moved for a protective order prohibiting the production of the medical records, arguing that they were protected by her physician-patient privilege. The court granted the protective order.

The state then filed a petition for special action in this court seeking review of that ruling. We granted an interlocutory stay of the proceedings pending our resolution of the matter. We accepted special action jurisdiction in this case because the state has no adequate remedy by appeal: if the state's inability to obtain this information were to result in its failure to show probable cause at the transfer hearing, it would have no right to appeal. *See State v. Superior Court,* 170 Ariz. 339, 341, 823 P.2d 1347, 1349 (App. 1991). Moreover, because the issue presented involves only the interpretation of a statute, it is purely a question of law and of statewide importance. *See Matera v. Superior Court,* 170 Ariz. 446, 447, 825 P.2d 971, 972 (App.1992).

## DISCUSSION

 Without the patient's consent, the physician-patient privilege prevents a physician from testifying about information necessary for the care of the patient which was acquired while attending that patient. Ariz. Rev.Stat. Ann. ("A.R.S.") § 13–4062. The privilege also applies to related medical records. *State v. Morales,* 170 Ariz. 360, 363, 824 P.2d 756, 759 (App.1991). The purpose of the privilege is to encourage the full and frank disclosure of medical history and symptoms so that patients will receive the best possible medical care. *Id.* The privilege is a creature of statute and therefore must be strictly construed. *Id.*

The state argues that the privilege does not apply to the subject records because A.R.S. section 13–3620(F) has abrogated it when child abuse is at issue. The juvenile responds that A.R.S. section 13–3620 has eliminated the privilege only with respect to a physician's treatment of an abused child, but has not affected a physician's treatment of an alleged abuser. The trial court accepted the juvenile's interpretation.

 The interpretation of a statute is a question of law that we review *de novo*. *Barry v. Alberty,* 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App.1992). The guiding principle of statutory construction is to ascertain and give effect to the legislative intent. *Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). When construing a statute, this court looks first to the statute's language; if the language is plain and unambiguous, we will apply it without resorting to other rules of construction. *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). The statutory provision at issue, however, must be considered in the context of the entire statute of which it is a part. *Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993). If the language of the statute is not clear, courts may look to other indicia of legislative intent, such as the subject matter, effects, consequences, and the reason and spirit of the statute. *State v. Iniguez,* 169 Ariz. 533, 536, 821 P.2d 194, 197 (App.1991).

 The pertinent portion of A.R.S. section 13–3620(F) provides:

> Except as provided in subsection G of this section,[1] the physician-patient privilege, the husband-wife privilege or any privilege except the attorney-client privilege, provided for by professions such as the practice of social work or nursing covered by law or a code of ethics regarding practitioner-client confidences, both as they relate to the competency of the witness and to the exclusion of confidential communications, shall not pertain in any civil or criminal litigation or administrative proceeding in which a child's neglect, dependency, abuse

1. Subsection (G) provides an exception for the privilege held by clergymen regarding confes-

sions made to them in their role as clergymen.

or abandonment is an issue nor in any judicial or administrative proceeding resulting from a report, information or records submitted pursuant to this section nor any investigation of a child's neglect or abuse conducted by a peace officer or the child protective services of the department of economic security.

The statute's language plainly and unambiguously provides that the physician-patient privilege is abrogated in any case involving the abuse of a child. It does not support the juvenile's contention that the legislature intended to abrogate only the privilege existing between a physician and an abused child. There is simply no such limiting language to be found. The plain and unambiguous language of the statute, therefore, supports the state's interpretation.

The juvenile does not dispute that the plain language of the subsection supports the state's interpretation. Rather, she contends that A.R.S. section 13–3620 is primarily a reporting statute that requires or permits a doctor to report suspected child abuse only after examining the injured child. She therefore argues that the placement of subsection (F) within the context of A.R.S. section 13–3620 makes it clear that the privilege limitation applies only to a physician's examination of an abused child. We disagree.

The juvenile relies on subsection (A), which requires "[a]ny physician[2] ... whose observation or examination of any minor discloses reasonable grounds to believe that a minor is or has been [injured] by other than accidental means" to report that information to the authorities. A.R.S. § 13–3620(A). Assuming *arguendo* that this subsection applies only in situations where the physician has examined an abused child, it still is the only subsection of the statute that is so limited. The scope of subsection (A), therefore, should not be construed to define and limit the scope of the entire statute.

For example, subsection (B), which the juvenile fails to address, provides:

Any person other than one required to report or cause reports to be made in subsection A of this section who has rea-

sonable grounds to believe that a minor is or has been a victim of abuse or neglect may report the information to [authorities].

A.R.S. § 13–3620(B). This subsection applies to any persons possessing information that gives them reason to suspect child abuse, regardless of how that information was obtained. The number of persons (which could include physicians) and range of situations (which could include medical examinations of patients who are not the child abuse victims) addressed by subsection (B) clearly exceeds the scope of those addressed by subsection (A).

Furthermore, the first sentence of subsection (F) affords immunity from civil or criminal liability to those who file a report pursuant to subsection (B). A.R.S. § 13–3620(F) (granting immunity to any person furnishing a report that is "required *or authorized* under this section" (emphasis added)). Subsections (B) and (F) thereby broaden the statute's scope far beyond instances where the suspicion of child abuse arises only from the professional observation or examination of the abused child. Accordingly, we conclude that subsection (A) neither defines nor limits the scope of A.R.S. section 13–3620.

In any event, any limitation that might be imposed by subsection (A) would itself be limited to only one of the three scenarios in which the privilege is abrogated by subsection (F). Subsection (F) provides that the physician-patient privilege shall not apply in:

1. "[A]ny civil or criminal litigation or administrative proceeding in which a child's neglect, dependency, abuse or abandonment is an issue;"

2. "any judicial or administrative proceeding resulting from a report ... submitted pursuant to this section;" or

3. "any investigation of a child's neglect or abuse conducted by a peace officer or the child protective services of the department of economic security."

A.R.S. § 13–3620(F). Although the second scenario is dependent upon the filing of a report, the first and third are not. In these

---

**2.** Subsection (A) also includes numerous other professions within its coverage, including "any

other person having responsibility for the care or treatment of children."

scenarios, the physician-patient privilege is not available regardless whether a report has been filed. *See State v. Hoester*, 681 S.W.2d 449, 451–52 (Mo.1984).

Further, in addition to the physician-patient privilege, subsection (F) also abrogates the marital privilege and "any privilege except the attorney-client privilege, provided for by professions ... covered by law or a code of ethics regarding practitioner-client confidences." [3] The abrogation of these other privileges has not been narrowly interpreted. *See State v. Salzman*, 139 Ariz. 521, 679 P.2d 544 (App.1984) (holding that the statute was clear and that it applied to the marital privilege broadly and without limitation).

The juvenile has not explained why, if the legislature had intended only a limited abrogation of the physician-patient privilege, it would have included it in a subsection that has fully abrogated several other privileges. The state's interpretation, though, is consistent with the unlimited abrogation of all the privileges listed in subsection (F). Had it intended to limit the abrogation of the physician-patient privilege, the legislature easily could have treated it in a separate section, as it did with the exception for clergymen in subsection (G).

Construing subsection (F) as a nullification of the physician-patient privilege in all cases involving the abuse of a child is consistent with the legislative scheme of A.R.S. section 13–3620, which is a broad piece of legislation designed to facilitate the detection, investigation, and prosecution of child abuse. The legislature has apparently decided that the public's interest in combating child abuse outweighs its interest in protecting confidential communications between physicians and patients. *See* Morris K. Udall & Joseph M. Livermore, *Law of Evidence* § 71 at 125 n. 7 (1982); *see also State v. Fagalde*, 85 Wash.2d 730, 539 P.2d 86, 90 (1975). The context of the statute as a whole, therefore, does not persuade us that subsection (F) is intended to abrogate anything less than the entire scope of the physician-patient privilege in cases involving the abuse of a child.[4]

Finally, we note that, in the instant case, there are no concerns about the release of normally confidential information that is unrelated to the suspected incident of child abuse. The information requested here involves the alleged abuser, relates to medical services provided on the date of the incident, and is directly related to the alleged abuse. Accordingly, we need not address what effect A.R.S section 13–3620(F) would have on requests for medical records that are remote in time or circumstances from the alleged abuse. We therefore reject the juvenile's contention that subsection (F)'s abrogation of the physician-patient privilege is limited to the examination of the abused child.

## CONCLUSION

For the foregoing reasons, we conclude that the medical records sought by the state are not protected by the physician-patient privilege. Accordingly, we accept jurisdiction and grant relief.

L. RAY HAIRE, Judge (Retired), concurs.

NOTE: The Honorable L. RAY HAIRE, Judge (Retired) was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Article 6, section 20 of the Arizona Constitution and A.R.S. section 38–813 (1985).

3. The other privileges abrogated would include those pertaining to confidential communications made to accountants, psychologists, and journalists. *See* Morris K. Udall et al., *Law of Evidence* § 71 at 125 n. 8 (1991) ("[I]n A.R.S. § 13–3620, all privileges except the attorney-client are declared inapplicable in any proceeding in which child abuse is in issue.").

4. Even if the contextual argument made by the juvenile were correct, we note that A.R.S. section 8–546.04(B), using language nearly identical to that of A.R.S. section 13–3620(F), abrogates the physician-patient privilege in any civil or criminal litigation involving the abuse, neglect, dependency, or abandonment of a child. A.R.S. section 8–546.04(B), which does not even arguably have the same contextual limitations propounded by the juvenile, clearly abrogates the physician-patient privilege ordinarily held by persons other than the abused child. Although not argued by the parties here, A.R.S. section 8–546.04(B)'s abrogation of the physician-patient privilege in cases of child abuse is likely applicable in the instant case, and would suffice in the absence of A.R.S. section 13–3620(F).

FIDEL, Judge, dissenting.

To cushion the impact of its holding, the majority declines to "address what effect [its interpretation of] A.R.S. section 13–3620(F) would have on requests for medical records that are remote in time or circumstances from the alleged abuse." But to decline to address, in this instance, is to decline to face what is inherent and inescapable. The majority holds that "subsection (F) is intended to abrogate [nothing] less than the entire scope of the physician-patient privilege in cases involving the abuse of a child." It also describes subsection (F) as "a nullification of the physician-patient privilege in all cases involving the abuse of a child." This holding has no bounds.

The majority observes that, in the instant case, the requested information "involves the alleged abuser, relates to medical services provided on the date of the incident, and is directly related to the alleged abuse." But the statute, as the majority reads it, cannot logically be so confined. The statute contains no temporal limitations; nor does it require circumstantial proximity. To abrogate or nullify the "entire scope of the physician-patient privilege" is to do so for treatment near and far. When child abuse investigators seek to probe a suspect's long past psychoanalysis, marital counseling, or some other form of treatment that attracts their interest, the records—whatever protection the rules of evidence or the constitutional right of privacy might provide—are wholly unprotected by the doctor-patient privilege.

Nor is the majority's holding confinable to cases of child abuse. Whatever doctor-patient privilege the statute abrogates, it abrogates for proceedings "in which a child's neglect, dependency, abuse or abandonment is an issue." A.R.S. § 13–3620(F).

Nor can the statutory abrogation, as the majority reads it, be confined to the privilege of the accused. The majority takes literally, and accepts no contextual limitations for, the statutory declaration that "the physician-patient privilege ... shall not pertain in any ... proceeding in which a child's neglect, dependency, abuse or abandonment is an issue." Because the majority finds no limiting language within subsection (F) that confines

abrogation of the privilege to treating relationships in which the patient is the child, the majority extends the abrogation to a second sphere of relationships—those in which the patient is the accused. But there is likewise no limiting language that confines the abrogation to the sphere of those accused. By the logic of the majority, when issues of abuse or neglect or abandonment arise, whether in criminal or child-custody or paternity or dependency or severance proceedings, not only parties accused of abuse or neglect, but other parties and witnesses, forfeit the confidentiality of medical records sought as probative of bias or motivation or countervailing fitness to raise the child.

To be sure, the doctor-patient privilege is not the only line of protection against discovery or admission of medical records or patient disclosures. Medical evidence may not stand the test of relevance. Courts may find that medical inquiries are not "reasonably calculated to lead to the discovery of admissible evidence." See Ariz.R.Civ.P. 26(b)(1), 16 A.R.S. Courts may find that medical discovery would violate the patient's right of privacy under the state or federal constitution. Cf. Rasmussen v. Fleming, 154 Ariz. 207, 215, 741 P.2d 674, 682 (1987) (observing that patients have certain privacy expectations within the doctor-patient relationship that are protected under Arizona Constitution article 2, section 8). But these protections are far less certain than the doctor-patient privilege. And, significantly, they are only likely to be enforced when medical inquiries are contested in an adjudicative forum.

This last point puts in focus another facet of the statute. Subsection (F) is not confined to proceedings in the courts or even to proceedings before administrative tribunals. Whatever doctor-patient privilege the statute abrogates, it expressly abrogates not only for judicial and administrative proceedings, but also for *investigations* by the police and by the Child Protective Services division ("C.P.S.") of the Department of Economic Security. A.R.S. § 13–3620(F). The prosecutor in this case requested the medical records of the accused from her physician and hospital by letter, attaching a copy of the statute and advising that, pursuant to subsec-

tion (F), the doctor-patient privilege did not pertain. Police and C.P.S. investigators may send similar letters in the course of pre-adjudicative investigations. Some inquiries will be narrowly drawn; others may be fishing expeditions. Whichever they are, there is no assurance they will come to the attention of the patients or be subjected to judicial review.

We cannot escape these sweeping implications of interpreting subsection (F) to nullify the entire scope of the doctor-patient privilege. The second sentence of subsection (F), standing alone, can be read to support the majority's view. But there are good reasons to believe that the legislature never contemplated, much less intended, that its words would stretch so far.

Section 13–3620 is a multi-subject statute that covers substantial ground. It varyingly requires or authorizes reporting by persons, health care providers among them, who have reason to believe that a child has been neglected or abused; it obliges, with certain exceptions, the release of medical records of an allegedly neglected or abused child; it immunizes those who report their reasonable suspicions and release supporting information; and it abrogates a variety of privileges that would inhibit the disclosures otherwise required. The statute does not isolate the provisions concerning medical service providers; it collectively addresses the obligations and privileges of persons from many walks of life. Yet, in three subsections the statute focuses specifically on medical treatment and medical records. *See* A.R.S. § 13–3620(A), (C), and (H). In none of these subsections does the legislature address treatment or records of suspects or those accused; in each, the legislature addresses only treatment and records of the child.

Subsection (A), insofar as it addresses health care providers, establishes a reporting obligation for "[a]ny physician, hospital intern or resident, surgeon, dentist, osteopath, chiropractor, podiatrist, county medical examiner, nurse, [or] psychologist ... having responsibility for the care or treatment of children *whose observation or examination of any minor* discloses reasonable grounds to believe that a minor is or has been the victim of injury, sexual abuse, [etc.]." A.R.S. § 13–3620(A) (emphasis added).

Subsection (C), which requires custodians to release medical records to police or C.P.S. investigators, is similarly circumscribed:

C. A person having custody or control *of medical records of a minor for whom a report is required or authorized* under this section shall make such records, or a copy of such records, available to a peace officer or child protective services worker investigating *the minor's neglect or abuse* on written request for the records signed by the peace officer or child protective services worker.

(Emphasis added.)

The same narrow focus is maintained in subsection (H), which permits a limited excision of information from psychiatric records of the child:

H. If psychiatric records are requested *pursuant to subsection C of this section, [which pertains to the records of the child,]* the custodian of the records shall notify the attending psychiatrist, who may excise from the records, before they are made available:

1. Personal information about individuals other than the patient.

2. Information regarding specific diagnosis or treatment of a psychiatric condition, if the attending psychiatrist certifies in writing that release of the information would be detrimental to the patient's health or treatment.

(Emphasis added.) *See also* A.R.S. § 13–3620(I) (permitting police or C.P.S. investigators to petition a court to order disclosure of portions of psychiatric records excised under subsection (H)). The statute contains no comparable provisions addressing the release or partial excision of psychiatric records of a suspect or an accused.

The presence of these specific provisions and the absence of comparable provisions discussing examination, treatment, or records of a suspect or an accused suggests that the legislature never contemplated the latter subject when it enacted A.R.S. § 13–3620. Indeed, subsection (C) would be superfluous if the legislature had intended by subsection

(F) to abrogate the privileged status of medical records in any investigation of child abuse or neglect. Rather, as the trial court sensibly concluded, subsections (A), (C), and (H) give context to the abrogation of the doctor-patient privilege in subsection (F). Because the only doctor-patient relationship that the legislature addressed or contemplated was that of the doctor and the child, the abrogation of the physician-patient privilege was limited to the privilege of the child.[5]

Is mine the only conceivable reading of the statute? Surely not. There are currents and cross-currents in the statute, and the majority rides some of them to its conclusion.[6] But in declaring what the legislature "intended," the majority indulges in projection. "The quest" in interpreting a statute, according to Llewellyn, is not so much "for the sense sought originally to be *put into it,* but rather for the sense which *can be quarried out of it* in the light of the new situation" before the court. Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed,* 3 Vand. L.Rev. 395, 400 (1950). In the situation before us, it is safer, in my view, to examine what the legislature contemplated than to imagine what it intended. And there is no statutory evidence that the legislature contemplated the wholesale nullification of privilege that the majority reads into 13–3620(F).

The legislature may or may not wish, if it examines the subject, to abrogate to some degree the doctor-patient privilege of those suspected of child abuse or child neglect. Such an examination would permit debate over temporal and circumstantial limits, privacy concerns, notice, the availability of judicial review, opportunities for excision of "personal information about individuals *other* than the patient," *see* A.R.S. § 13–3620(H)(1), and a host of other pertinent considerations. But the legislature has not examined the subject, and, in my view, did not enact the sweeping abrogation that the majority achieves today.

---

5. Subsections (A), (C), and (H) also serve to distinguish this case from *State v. Salzman,* 139 Ariz. 521, 679 P.2d 544 (App.1984). In that case, the majority correctly notes, this court declined to interpret narrowly the abrogation by section 13–3620(F) of the *marital* privilege. But there is no discussion of marital relations or communications elsewhere in the statute that would provide a narrowing context for the marital privilege. By contrast, subsections (A), (C) and (H), which focus on medical examinations and records of the child, provide a narrowing context for the doctor-patient privilege and suggest the extent ·to which the legislature considered its abrogation.

6. Section 8–546.04(B), cited by the majority, contains privilege-abrogation language similar to, though less extensive than, that of section 13–3620(F). Section 8–546.04(B) is contained within Title 8, article 3, of the Arizona Revised Statutes, which establishes the powers and responsibilities of protective services workers. *See* A.R.S. §§ 8–546 et seq. In 1976 the immunity and privilege-abrogation sections of sections 8–546.04 and 13–842.01, the predecessor to 13–3620, were amended into conformity, with the broader abrogating language of the former incor-porated into the latter. Laws 1976, Ch. 171, §§ 2, 3. Then in 1986, section 13–3620 was substantially expanded. Within subsection 13–3620(F) the abrogation of privilege, which had previously applied only in judicial proceedings, was extended to administrative proceedings and to police and C.P.S. investigations; and subsections (B), discussed in the majority opinion, and (C), (H), and (I), discussed in this opinion, were added to the statute. No comparable additions were made to section 8–546.04.

The majority reasons that section 8–546.04(B) is not subject to the contextual limitations that the juvenile attributes to section 13–3620. However, section 8–546.04(B) was never the subject of judicial interpretation before the 1976 conforming amendment to the predecessor ·to section 13–3620, and it remains uninterpreted in the case law since that time. Whatever the statutes mean, they are interrelated and deserve a harmonizing construction. And, in my view, the legislature's exclusive focus on medical records *of the child* in the 1986 addition of subsections (C), (H), and (I) strongly indicates the limited extent to which the legislature contemplated, under either statute, an abrogation of the doctor-patient privilege.