19 P.3d 630

**Cindy FOSTER, individually, Petitioner,**

**v.**

**The Honorable Michael ANABLE, Commissioner, Respondent,**

**Arizona State Land Department, Real Party in Interest.**

**No. 1 CA–SA 00–0180.**

Court of Appeals of Arizona, Division 1, Department D.

March 8, 2001.

G. David DeLozier, P.C., Cave Creek, Attorney for Petitioner.

Janet A. Napolitano, Attorney General, by Patricia J. Boland, Laurie A. Hachtel, Assistant Attorneys General, Phoenix, Attorneys for Respondent.

West Valley Alliance, by William Lipscomb, Co–Chair, Surprise, Amicus Curiae West Valley Alliance.

White Tanks Concerned Citizens, Inc., by Kim Beneli, Director, Surprise, Amicus Curiae White Tanks Concerned Citizens, Inc.

## OPINION

WEISBERG, Judge.

¶ 1 Petitioner Cindy Foster ("Petitioner") brings this special action challenging an order by the Arizona State Land Department

Commissioner ("the Commissioner") denying her protest of a sale of a parcel of state trust land ("Section 16"). We accept jurisdiction, but deny relief.

## FACTS

¶2 The Arizona State Land Department ("Department") ordered an appraisal of Section 16 by an independent appraiser in contemplation of selling the property. The Department's chief appraiser then reviewed and concurred with this appraisal. On April 21, 2000, the Commissioner authorized the sale of Section 16. The Commissioner published notice of the sale starting April 26, 2000, in the *Tribune* (Scottsdale and East Valley Edition) and April 27, 2000, in the *Arizona Business Gazette*. On May 27, 2000, Petitioner sent a facsimile to the Commissioner protesting the sale and raising several concerns. The Commissioner denied Petitioner's protest, finding that the protest was untimely and rejecting the substance of Petitioner's arguments. Petitioner then timely filed this special action.

## ISSUES PRESENTED

1. Did Petitioner timely protest the proposed auction when the Department received the protest 31 days after publication of notice in the *Tribune* and 30 days after publication in the *Arizona Business Gazette?*

2. Did the Department properly appraise the property prior to sale?

3. Did the Department properly publish notice of the proposed auction?

4. Did sufficient evidence support the Commissioner's finding that the development of Section 16 would not be "leapfrog development"?

5. Does the proposed auction of Section 16, Sale Number 53 105333, violate section 28 of the Arizona New Mexico Enabling Act?

## JURISDICTION

¶3 Acceptance of jurisdiction of this special action is mandatory under Arizona Revised Statutes Annotated ("A.R.S.") section 37–301(C) (Supp.2000). *See Martori v.*

*Arizona State Land Dep't,* 176 Ariz. 420, 421 n. 1, 861 P.2d 1182, 1183 n. 1 (App.1993), *vacated on other grounds,* 178 Ariz. 478, 875 P.2d 137 (1994).

## ANALYSIS

### Timeliness of Protest

¶4 A protest of a proposed sale of land must be filed "with the department within thirty days after the first day of publication of terms of the proposed auction." A.R.S. § 37–301(A) (Supp.2000). The Commissioner found that Petitioner's protest was not timely because the Department received it 31 days after notice was first published in the *Tribune.* The Commissioner argues that the statute of limitations started running with the first publication in the *Tribune.* Petitioner responds that the statute of limitations did not run until notice was first published in the *Arizona Business Gazette,* thirty days before her protest. We agree with Petitioner.

¶5 We review issues of statutory interpretation *de novo. State ex rel. Udall v. Superior Ct.,* 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (App.1995). Ordinarily, we defer to an agency's interpretation of a statute it is charged with enforcing unless we conclude that the legislature intended a different interpretation. *Arizona Dep't of Revenue v. Great W. Publ'g,* 197 Ariz. 72, 74, ¶7, 3 P.3d 992, 994 (App.1999); *U.S. Parking Systems v. City of Phoenix,* 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989). In determining legislative intent, we read a statute in the context of related provisions. *Goulder v. Arizona Dep't of Transp., Motor Vehicle Div.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App. 1993).

¶6 To decide this issue, we must interpret "first day of publication" of A.R.S. section 37–301(A) in such a manner as to give effect to the legislature's intent, *see State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). The statutory requirement for notice of state land sales provides guidance. A.R.S. § 37–237 (1993). The legislature has required that the Depart-

ment publish notice of a proposed sale in both "a newspaper of general circulation published regularly at the state capital, and in a newspaper of like circulation regularly published nearest the location of lands to be sold." *Id.* The general purpose of notice statutes is to inform the public. The specific purpose of the statute requiring publication in a newspaper of general circulation is to ensure that "the publication be generally read so that the contents of the notice be brought home to the public generally." *McIntyre v. Mohave Cty.*, 127 Ariz. 317, 318, 620 P.2d 696, 697 (1980); *Wahl v. Hart*, 85 Ariz. 85, 87, 332 P.2d 195, 196 (1958). By also requiring publication in a newspaper nearest the location of lands to be sold, the legislature manifested its heightened concern that those living near the property be informed of sales that might affect them. *See Shulansky v. Michaels*, 14 Ariz.App. 402, 404, 484 P.2d 14, 16 (1971). Clearly, the legislature has required dual publication in order to reach a portion of the public that otherwise might be missed with just one publication.

■ ¶ 7 Next, a statute limiting the time within which to protest reflects the amount of time the legislature has deemed reasonable for a person to receive and act on the notice of a sale. By establishing a protest time limit of thirty days after the first publication, the legislature indicated that thirty days was sufficient time. However, under the Commissioner's interpretation of the statute, a reader of only the newspaper of general circulation would have less time to protest a sale than would a reader of the newspaper published nearest the location of the property. That interpretation conflicts with the legislature's intent to maximize the number of persons afforded the opportunity to protest the sale, regardless which newspaper provided the notice. We therefore conclude that a protester has thirty days from the latter of the two first publication dates within which to file a protest.

¶ 8 In this case, Petitioner was required to file her protest within thirty days of the publication in the *Arizona Business Gazette.*

Petitioner met this deadline, and therefore her protest was timely.

### Appraisal of Property

■ ¶ 9 Petitioner argues that the appraisal of Section 16 was hastily done and inadequate. Both Petitioner and Amicus White Tanks Concerned Citizens, Inc., elaborate that, because the land was evaluated for a bulk sale, the appraisal violated the Arizona New Mexico Enabling Act, Act of June 20, 1910, Pub.L. No. 219 (ch. 310), 36 Stat. 557 ("Enabling Act"). They suggest that the "true value" of Section 16 was greater than the appraised value for sale because it would yield more revenue if it were leased for commercial purposes. *See* Enabling Act § 28 (stating "[a]ll lands ... before being offered [for sale], shall be appraised at their true value.").

■ ¶ 10 However, aside from stating that the Department's appraisal was "substantially lacking in content" and citing her appraiser's review[1] of the State's appraisal, Petitioner provides no support for her argument that the Commissioner abused his discretion in accepting the appraisal. Furthermore, neither Petitioner nor the Amicus provides support for their hypothesis that more revenue could have been garnered by a commercial lease of only a portion of the property. Moreover, "[t]he Commissioner has great discretion concerning the disposition of trust lands.... These decisions will not be overturned absent illegal action, an abuse of discretion, or an unfair bidding." *Campana v. Arizona State Land Dep't,* 176 Ariz. 288, 291, 860 P.2d 1341, 1344 (App. 1993). We therefore conclude that the Commissioner did not abuse his discretion in authorizing a bulk sale based on the subject appraisal.

### Publication of Notice of Auction

¶ 11 Petitioner next argues that the Department's publication of the legal notice of the auction did not meet the relevant statutory requirements. As mentioned earlier, a notice of sale of state lands must be publish-

---

**1.** This review was admittedly not in compliance with the appraisal review guidelines of the Uni-

form Standards of Professional Appraisal Practice.

ed "in a newspaper of general circulation published regularly at the state capital, and in a newspaper of like circulation regularly published nearest the location of the lands to be sold." A.R.S. § 37–237.

¶ 12 As to the required publication in a newspaper of general circulation, Petitioner concedes that the *Arizona Business Gazette* was such a newspaper, but nevertheless argues that *The Arizona Republic* would have been a better choice because its circulation is greater. However, A.R.S. section 37–237 requires only that such newspaper be "of general circulation" and be "published regularly at the state capital" it does not require that it be the newspaper with the largest circulation in the state capital. The Commissioner therefore acted within his discretion in publishing one notice in the *Arizona Business Gazette*.

¶ 13 As to the required publication in a newspaper "nearest the location of the lands to be sold," Petitioner argues that publication in the Scottsdale and East Valley Edition of the *Tribune* was inadequate. She asserts that the *Tribune* is a Scottsdale/East Valley publication and that the land is located in North Phoenix. But, she has provided no support for her argument that the *Tribune* is not a newspaper published nearest the location of the property to be sold.[2] Rather, as Petitioner acknowledged in her opening brief, the former mayor of Scottsdale expressed the likelihood that Scottsdale would annex the property, thereby reflecting the property's proximity to Scottsdale, a situs of the *Tribune*.

¶ 14 Moreover, our supreme court has held that the Enabling Act, the Arizona Constitution and the subject statute require only "substantial conformity" with the provision requiring publication in the newspaper nearest the property. *State v. Boyd*, 60 Ariz. 388, 393–94, 138 P.2d 284, 286 (1943). Here, as in *Boyd*, publication substantially conformed with A.R.S. section 37–237. The Department therefore satisfied the Enabling Act, the constitution, and the statute by publishing in the *Arizona Business Gazette* and the *Tribune*.

### Leapfrog Development

¶ 15 Petitioner also argues that the sale of Section 16 violated the prohibition against leapfrog development on state lands. *See* A.R.S. § 37–132(A)(4)(Supp.2000). "Leapfrog development" is the "development of lands in a manner requiring the extension of public facilities and services from their existing terminal point through intervening undeveloped areas that are scheduled for development at a later time." A.R.S. § 37–101(12) (Supp.2000). Petitioner points out that the Commissioner must "prevent any urban sprawl or leapfrog development on state lands," and asserts that, because the nearest sewer facility is one half mile away, public services would have to be extended into the property, thereby resulting in leapfrog development. A.R.S. § 37–132(A)(4).

¶ 16 In reviewing the Commissioner's ruling concerning the alleged leapfrog development, we will affirm if sufficient evidence exists to support the decision. *Campana*, 176 Ariz. at 293, 860 P.2d at 1346. After reviewing aerial photographs, the Commissioner noted that Section 16 was *surrounded* by development, including significant development on its north side. Furthermore, based on the relevant conceptual land use plan, the Commissioner found that "the location of the necessary infrastructure leads to the conclusion that this is not leapfrog development." Sufficient evidence supports the Commissioner's ruling.

### Arizona–New Mexico Enabling Act

¶ 17 Petitioner last argues that the sale of Section 16 violates the Enabling Act because the sale is not in the best interest of the trust due to the alleged rural nature of the community surrounding the property. Petitioner unfortunately fails to explain how preserving the alleged rural nature of the community surrounding the property is relevant to maximizing trust revenue.

¶ 18 The purpose of the Enabling Act is "to produce a fund, accumulated by sale and use of the trust lands, with which the State could support the public institutions designated by the Act." *Lassen v. Ari-*

2. Nothing in the record sets forth where the     edition of the *Tribune* is published or distributed.

*zona ex rel. Arizona Highway Dep't,* 385 U.S. 458, 463, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967). This court has recognized that the Commissioner has the duty to "maximize revenue to the trust," *Campana,* 176 Ariz. at 291, 860 P.2d at 1344, while also noting that the " 'best interest standard' does not require blind adherence to the goal of maximizing revenue." *Jeffries v. Hassell,* 197 Ariz. 151, 154, ¶ 8, 3 P.3d 1071, 1074 (App.1999) (quoting *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prods., Inc.,* 167 Ariz. 383, 392, 807 P.2d 1119, 1128 (App. 1990)). Further, "[c]ourt opinions concerning the trust land provisions in Arizona strictly interpret the Enabling Act in order to protect the beneficiaries of the trust." *Kadish v. Arizona State Land Dep't,* 155 Ariz. 484, 500, 747 P.2d 1183, 1199 (1987).

¶ 19 Petitioner's concerns focus solely on the fate of the land after the sale, rather than the revenue generated. Given the record before the Commissioner, we conclude that he had no duty to ignore his obligation to maximize revenue in favor of the preservation of the character of the land adjacent to Section 16, and therefore did not abuse his discretion in offering the land for sale. As the Commissioner stated in his denial of Petitioner's protest, Petitioner's concerns would be better addressed "through planning and permitting by local government or by other state or federal agencies" when the land will be "subject to the laws, rules and regulations which regulate the use of private land."

### CONCLUSION

¶ 20 For the foregoing reasons, we accept jurisdiction but deny relief.

CONCURRING: WILLIAM F. GARBARINO, Judge, SUSAN A. EHRLICH, Judge.

