NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUSAN M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.M., *Appellees*.

No. 1 CA-JV 20-0005
FILED 9-28-2020

Appeal from the Superior Court in Maricopa County
No. JD528945
The Honorable Jennifer E. Green, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

¶1        Susan M. ("Mother") appeals the juvenile court's order terminating her parental rights to E.M. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother has four children, none of whom are in Mother's physical custody, but only the youngest, 3-year-old E.M., is subject to the termination order on appeal. Mother has a history of over ten years of alcohol abuse that includes a conviction for extreme DUI in 2014 and two previous dependency petitions involving Mother's three older children based on Mother's substance abuse and neglect.

¶3        In November 2017, Mother's older children called their paternal grandmother because Mother was passed out and they were unable to wake her. The grandmother took the older children to school and removed E.M. from Mother's home. After Mother woke up, she drove to the grandmother's home and the grandmother called the police. The police did not allow Mother to take E.M., and E.M. stayed with the older children's grandmother. The police reported that Mother had answered questions slowly and with slurred speech, appeared intoxicated, and faintly smelled of alcohol. Mother self-referred to a residential treatment center to address substance abuse.

¶4        The police notified the Department of Child Safety ("Department") who petitioned for dependency in November while Mother was at the residential treatment center. The Department alleged that E.M. was dependent due to Mother's substance abuse and neglect.[1]

---

[1]        The petition included two of her older children, who were then placed with those children's father and dismissed from the case.

Mother plead no contest to the dependency petition and the juvenile court adjudicated E.M. dependent in January 2018. The court implemented a case plan of reunification and offered individual and family therapy, substance abuse treatment and counseling, parent-aide services, drug testing, in-home services, parenting classes, and case management. Mother completed a psychological examination with Dr. James Thal, who diagnosed her with severe alcohol abuse disorder.

¶5            Beginning early 2018, Mother participated in counseling with Jewish Family and Children's Services and TERROS. TERROS did not diagnose her with a severe substance-abuse disorder that would benefit from treatment, however, because Mother minimized her drinking to the counselors and did not detail the events leading to the dependency action. Instead, the counselor at TERROS diagnosed Mother with major depressive disorder. Mother's Department case manager disagreed with this assessment based on her knowledge of Mother's excessive drinking within the last eighteen months.

¶6            Mother began parent-aide services and drug testing with Physician Services, Inc in February 2018. Mother missed seven tests in March and April 2018 that the Department excused because she was receiving medical treatment. The Department remained concerned, however, when it received reports that Mother had been seeking illegal prescription drugs. Because Mother participated in services and showed temporary sobriety through negative tests, the court authorized E.M.'s return to Mother's physical custody.

¶7            In April 2018, E.M. fell into Mother's pool when Mother left her unattended.  Two months later, two of her older children reported that Mother continued to drink alcohol in front of them and were worried about E.M.'s well-being. The Department asked Mother to submit to a drug test, but she failed to do so and then skipped her next two required tests. Based on these events, the Department reinstated supervised visitation for the older children and assigned a "24/7 safety monitor" for E.M. Mother suggested her long-time friend, Joel M., to be a safety monitor. The Department also required that Mother submit to more frequent urinalysis tests. Mother subsequently missed another drug test the day Joel M. was assigned as a safety monitor. Despite Mother's missed drug tests, however, she completed the first part of her TERROS services and "graduated to recovery maintenance around[] July 2018." Joel M. nevertheless deemed her a "functional alcoholic."

**¶8**        In July 2018, Mother absconded with E.M. Police found her "very drunk and very uncooperative" in a hotel parking lot with E.M., who had two black eyes, but Mother refused to seek medical attention for her or hand her over to the paramedics. Mother almost dropped E.M. but a paramedic caught E.M. and brought her to an ambulance, which took E.M. to a hospital. The examining doctor found E.M. had linear bruises on her back that looked like she had been struck with a stick. During her interview with police, Mother poured wine into a Gatorade bottle, which the interviewer confiscated. Police concluded that E.M. was injured in Mother's care and Mother later pled guilty to felony child abuse.

**¶9**        The Department removed E.M. from Mother's custody in August, and E.M. was placed with her maternal grandmother. That same month, Mother missed another drug test. In September 2018, the maternal grandmother left for Utah, leaving E.M. with the safety monitor, Joel M. Mother found Joel M., A.M.—Mother's eldest daughter—and E.M. together. Mother was reportedly intoxicated and wanted to take E.M. with her, but A.M. and Joel M. tried to keep her from doing so, which led to a fight between Mother and A.M. After the fight, Mother left with E.M. Chandler Police alerted other police departments that Mother had kidnapped E.M. and Phoenix Police found Mother and E.M. at a motel. The Department removed E.M. and placed her in foster care and in October 2018 moved to terminate Mother's parental rights.

**¶10**        From October 2018 through July 2019, Mother increased her participation in services and searched out independent programs, including individual therapy with Dr. Christopher Boyd. Dr. Boyd reported that Mother had successfully completed her individual therapy in January 2019. Mother, however, was not fully forthcoming with Dr. Boyd. In November 2018, during the time Mother saw Dr. Boyd, she had submitted a diluted drug test. That same month, Mother engaged in domestic violence with a young man residing in her home while they were intoxicated.

**¶11**        In March 2019, Mother again submitted a diluted drug test and missed another test, claiming that she missed it because of "appointments" and a blown tire. The Department did not excuse the missed test because Mother had had ample time and opportunity to test before her tire blew out. In May 2019, Mother refused another drug test, claiming again that she was unable to do so because of a tire blowout even though the Department had arranged for her transportation. After Mother's refusal, the Department observed Mother walk to her car and drive away.

4

¶12            In August 2019, the Department moved to amend its termination grounds to include 15 months' out-of-home placement under A.R.S. § 8–533(8)(c). The court held a three-day trial in September 2019.

¶13            A TERROS clinician testified that by May 2019, Mother was in sustained full remission, meaning twelve months of sobriety. The clinician admitted, however, that TERROS would need to reassess Mother's services if she had been abusing alcohol daily for a period of months. Dr. Boyd testified that it "wouldn't be okay" that Mother relapsed in July 2018, after finishing substance-abuse treatment in May, Mother not having shared that information. Given the information, Dr. Boyd qualified his report that Mother had successfully completed therapy within "specifically that window" of time from October 2018 to January 2019.

¶14            Dr. Thal testified that although Mother seemed to understand the consequences of her drinking, she lacked insight into the underlying causes of her ten-year struggle with alcohol. When asked his opinion on Mother's relapse two months after he had performed the psychological evaluation, Dr. Thal pointed to the high stakes of the case and said that for Mother "to relapse in view of that . . . gives you a lens into how serious the issue [of substance abuse] is for [Mother]." Dr. Thal testified that a patient diagnosed with alcohol use disorder must demonstrate a period of sobriety of approximately five years to be considered "cured."

¶15            The Department's case manager testified that Mother had not disclosed any alcohol use after July 2018, despite police documenting her intoxication during the November 2018, domestic violence incident, and her failure to drug test when the Department suspected she had relapsed. Ongoing missed and diluted tests showed that although Mother had engaged in services, she was not benefitting from them or making the necessary behavioral changes. Finally, Mother's case manager testified that adoption was in E.M.'s best interest and that her placement was willing to adopt her.

¶16            Mother testified that she did not bruise E.M.'s face and back, but Joel M. must have. She acknowledged, however, that she had failed to get E.M. proper medical care during the July 2018 incident, when upon reassessing the situation, she purchased and drank wine instead of getting E.M. to a hospital. She claimed that she had not consumed alcohol since that July 2018 incident, had made the appropriate behavioral changes, had created a safe place for E.M., and that reunification was in E.M.'s best interest. Mother blamed Joel M. for the termination proceeding and said that she would still have her children but for him.

¶17        The juvenile court terminated Mother's parental rights on all four grounds of abuse, neglect, substance abuse, and 15 months in out-of-home placement. The court concluded that "evidence as a whole shows Mother neglected [E.M.] by exposing her to 'situations in which [Mother] reasonably should know that a person was abusing or neglecting a child.'" For termination under neglect, the court found that Mother had failed to phone paramedics after E.M. fell into her pool in April and had failed to obtain medical care for E.M. on July 19, 2018, thereby neglecting to provide E.M. "supervision, food, clothing, shelter or medical care."

¶18        The court found that the Department presented clear and convincing evidence of Mother's chronic substance abuse under A.R.S. § 8–533(B)(3). While the court recognized Mother's extensive treatment plan and work, it found that Mother was impaired during the July 2018 motel incident, the November 2018 domestic violence incident, and considered Mother's refusal to take a drug test in May 2019 to be a positive test. Considering the "high stakes" of the dependency and severance proceeding, the court found that Mother's substance abuse will likely continue for a "prolonged and indeterminate period of time." Last, the court found that Mother's improvements were "too little, too late" and that the Department met its burden on the 15 months in out-of-home placement ground. The court also found that termination of Mother's parental rights was in E.M.'s best interests. Mother timely appealed.

**DISCUSSION**

¶19        Mother argues that reasonable evidence did not support the juvenile court's termination order. She also argues that Dr. Thal's five-year timeline would constitute a *per se* grounds for severance of her rights based on a diagnosis of severe alcohol abuse disorder because no dependency action would last five years.

¶20        Although a parent's right to care, custody, and control of her child is fundamental, it is not absolute. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78 ¶ 6 (App. 2005). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9 (App. 2015). We accept the juvenile court's factual findings unless no reasonable evidence supports them and will affirm a severance order unless

clearly erroneous. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 508 ¶ 1 (App. 2008). Even if the juvenile court could have decided either way on an issue based on fact and testimony, this Court "does not sit to second-guess the tough discretionary calls of front-line decision makers in the trial courts." *State ex rel. Romley v. Superior Court*, 170 Ariz. 339, 343 (App. 1991). Furthermore, we view the evidence and draw all reasonable inferences from it "in favor of supporting the findings of the [juvenile] court." *Maricopa Cty. Juv. Action J-75482*, 111 Ariz. 588, 591 (1975).

**¶21** To terminate parental rights for 15 months in an out-of-home placement, the juvenile court must find clear and convincing evidence that (1) the Department made diligent efforts to provide appropriate reunification services, (2) the child has been in an out-of-home placement for a cumulative total period of 15 months or longer pursuant to court order, (3) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement, and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c). For purposes of this section, "circumstances" means those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for her child, which are abuse, neglect, and substance abuse. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330 (App. 2007).

**¶22** Reasonable evidence supports the court's order terminating Mother's parental rights. The Department removed E.M from Mother's home in November of 2017 due to neglect and substance abuse when Mother entered a rehabilitation facility. By the time of the termination hearing in September of 2019, E.M had been in out-of-home placement for all but four months. Although E.M. was briefly returned to Mother's care after she complied with the case plan in April 2018, the Department again removed E.M. in August 2018, after police found that E.M. had suffered abuse while in Mother's care. After the second removal, Mother absconded with E.M. while intoxicated. Two months later, Mother submitted a diluted drug test and police reported that she was intoxicated while engaging in domestic violence. Mother then missed tests in March and May 2019. The juvenile court considered Mother's missed test in May as a positive test. These facts provide reasonable evidence that Mother had not remedied the circumstances that caused E.M.'s out-of-home placement and that there was a substantial likelihood that Mother's substance abuse would prevent her from effecting proper parental care and control over E.M. in the near future.

¶23　　　　Mother's arguments primarily ask the court to reweigh the evidence on issues of fact, which we will not do. *See Williams v. King*, 248 Ariz. 311, 317 (App. 2020). While the record may include conflicting evidence, the juvenile court has the duty as fact finder to resolve any conflicts. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). Mother also argues that Dr. Thal's five-year timeline provides a *per se* grounds for termination contrary to established law. But as described above, the juvenile court found that Mother failed to comply with all testing requirements and did not rely exclusively on Dr. Thal's five-year timeline. While Dr. Thal testified regarding when Mother might be "cured" of her alcohol dependence, his opinion did not preclude that Mother could have safely parented E.M. during her recovery had she complied with testing and other requirements. Rather, the evidence supports the juvenile court's findings that Mother failed to remedy her substance abuse and that her substance abuse will likely prevent her from effecting proper parental care and control in the near future just as it had in the near past. Thus, Mother's legal argument is inapplicable to the findings of fact. Because we find that the court did not abuse its discretion by terminating Mother's parental rights under the 15 months' out-of-home placement ground, we need not address the other grounds for termination. *Jennifer S.*, 240 Ariz. at 286 ¶ 15.

¶24　　　　We need not consider the juvenile court's best interests findings because Mother does not challenge them on appeal.

## CONCLUSION

¶25　　　　For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:　AA