163 Ariz. 380 (1989)
788 P.2d 113
Louis MARTINEZ and Jane Doe Martinez, husband and wife, Plaintiffs-Appellants,
v.
STATE WORKMAN'S COMPENSATION INSURANCE FUND of the State of Arizona, and the City of Phoenix, Defendants-Appellees.
No. 1 CA-CIV 9868.
Court of Appeals of Arizona, Division 1, Department D.
November 21, 1989.
Review Denied March 27, 1990.
*381 Treon, Strick, Lucia & Aguirre, P.A. by Cynthia A. Caruso, Phoenix, for plaintiffs-appellants.
State Compensation Fund by Christopher E. Kamper, Chief Counsel, Phoenix, for defendants-appellees.
OPINION
KLEINSCHMIDT, Presiding Judge.
The single issue raised in this appeal is whether a workers' compensation carrier can assert a lien, for amounts it has paid to an injured worker, against the Arizona Property and Casualty Insurance Guaranty Fund. We hold that it cannot.
The issue arose from the following undisputed facts. The appellant, Louis Martinez, was injured in the course of his employment as a Phoenix police officer when a motorist negligently struck him. The motorist was insured by Great Global Assurance Company, which became insolvent after the accident. Martinez's claim against the motorist was subsequently assumed by the Arizona Property and Casualty Insurance Guaranty Fund (Guaranty Fund), pursuant to A.R.S. sections 20-661 et seq. (Supp. 1988).
As a result of Martinez's injuries, the State Compensation Fund paid Martinez workers' compensation benefits totalling $1,025.14. Martinez subsequently settled his claim against the motorist with the Guaranty Fund. The Compensation Fund asserted a lien pursuant to A.R.S. section 23-1023(C) against the amount the Guaranty Fund owed Martinez on the settlement. The lien was to reimburse the Compensation Fund for the amount it had paid Martinez.
Martinez filed a declaratory judgment action against the Compensation Fund, seeking a ruling that A.R.S. section 23-1023 does not authorize a lien against the Guaranty Fund. On cross-motions for summary judgment, the trial court entered summary judgment in favor of the Compensation Fund. Martinez brought this appeal.
THE WORKERS' COMPENSATION STATUTE
This appeal involves the interpretation of two statutory schemes. The pertinent provision of the workers' compensation statutes, A.R.S. section 23-1023, allows an injured employee to seek recovery against the person who caused the injury if that person does not work for the same employer. It also gives the compensation carrier a lien against any such recovery for amounts the carrier has paid the injured employee. The statute states:
A. If an employee entitled to compensation under this chapter is injured or killed by the negligence or wrong of another not in the same employ, such injured employee, or in event of death his dependents, may pursue his remedy against such other person.
....
C. If he [the employee] proceeds against such other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim *382 shall have a lien on the amount actually collectable from such other person to the extent of such compensation and medical, surgical and hospital benefits paid. (Emphasis added)
A.R.S. § 23-1023(A) and (C). The purposes of the lien provision are:
[T]o require the third party to pay what he would normally pay if there were no workers' compensation, to reimburse the carrier for its compensation expenditure, and to allow the compensation beneficiary to enjoy the excess of the damage recovery over compensation.
Mannel v. Industrial Comm'n, 142 Ariz. 153, 155, 688 P.2d 1045, 1047 (App. 1984), cert. denied, 469 U.S. 1212, 105 S.Ct. 1183, 84 L.Ed.2d 331 (1985) (citing 2A A. Larson, Workmen's Compensation Law, § 74.16(a) (1983)). Because this statutory lien runs counter to the general rule that an insurer may not be the assignee or subrogee of its insured's tort claim, the terms of the statute dictate whether a lien is allowed. Mannel, 142 Ariz. at 155-56, 688 P.2d at 1047-48.
THE GUARANTY FUND STATUTE
The other statutory scheme we must interpret relates to the Arizona Property and Casualty Insurance Guaranty Fund established under A.R.S. sections 20-661 et seq., the purpose of which is to cover claims against insolvent insurers. A covered claim is defined as:
[A]n unpaid claim, including one for unearned premium, which arises out of and is within the coverage of an insurance policy to which this article applies issued by an insurer, ....
A.R.S. § 20-661(3) (Supp. 1988). Exclusionary language critical to our decision adds:

Covered claim does not include any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise ....
Id. (emphasis added). The Guaranty Fund essentially steps into the shoes of the insolvent insurer by assuming all of the insurer's "rights, duties and obligations" on covered claims. A.R.S. § 20-667(C) (Supp. 1988).
THE WORKERS' COMPENSATION STATUTE AUTHORIZES THE LIEN
Martinez's first argument is that the workers' compensation statute does not authorize the filing of a lien against the Guaranty Fund. He relies on the language of A.R.S. section 23-1023. Subsection (A) states that an employee may pursue a remedy against "such other person" (the tort-feasor), and subsection (C) states that the worker's compensation carrier will have a lien on the amount collectable from "such other person." Martinez argues that "such other person" refers only to the negligent tort-feasor. Because the Guaranty Fund is not the negligent tort-feasor, he insists that the lien is not authorized.
Martinez cites two court of appeals cases construing the language of A.R.S. section 23-1023(C). In Sunstate Equip. Corp. v. Industrial Comm'n, 135 Ariz. 477, 662 P.2d 152 (App. 1983), we held that uninsured motorist benefits payable to the injured employee under the employer's policy were not subject to a lien pursuant to A.R.S. section 23-1023(C). The court stated:
Our interpretation of the subject statute is predicated upon the basic principle of statutory construction that a statute which is unambiguous should be interpreted to mean what it plainly states unless an absurdity results. E.g., Balestrieri v. Hartford Accident & Indem. Ins. Co., 112 Ariz. 160, 540 P.2d 126 (1975). Subsection 23-1023(A) permits an injured employee to pursue his remedy against a tort-feasor (termed in the statute `such other person'). An employee's recovery by reason of uninsured coverage is not an amount collectible from the tort-feasor (i.e., `such other person').
Id. at 479, 662 P.2d at 154. In response to the carrier's contention that refusing to allow the lien would result in a double recovery to the employee, the court noted:
While we acknowledge that by disallowing a lien there may well result a double *383 recovery for an employee and increased premiums for the employer, we are of the firm opinion that whether the employee receives a `double recovery' is legally immaterial. Under the clear and unambiguous language of A.R.S. § 23-1023(C), no lien attaches to proceeds received by reason of uninsured motorist coverage, regardless of who pays the premium for such coverage.
Id. at 479-80, 662 P.2d at 154-55.
In a subsequent case, we held that a lien could not be asserted against a legal malpractice settlement paid by the injured employee's attorney. Travelers Ins. Co. v. Breese, 138 Ariz. 508, 675 P.2d 1327 (App. 1983). The injured employee hired an attorney to pursue his remedy against a negligent third party. See A.R.S. § 23-1023(A). The attorney failed to file a complaint within the one-year California statute of limitations. The employee subsequently sued the attorney for malpractice and eventually settled. In the meantime, the workers' compensation carrier asserted a lien against any amount paid by the attorney on the malpractice claim. On appeal, this court concluded:
[A]ny lien which the insurance carrier has is against `the amount actually collectible from such other person to the extent of such compensation and medical, surgical and hospital benefits paid.' (emphasis added). A.R.S. § 23-1023(C). The unequivocal language of this provision only gives Travelers a lien upon amounts actually collected from Union Oil, the party defined in § 23-1023(A), while no lien expressly arises from the statute on amounts collected from [the attorney], a person not responsible for any of Earl Breese's injuries.
Id. at 512, 675 P.2d at 1331. The court also pointed out:

[T]he only relevant factor to be considered is whether the amount of money collected is derived from `such other person' as defined by A.R.S. § 23-1023. Id. Thus, A.R.S. § 23-1023(C) controls the extent to which an insurance carrier will be subrogated to the injured employee's recovery.
Id. (emphasis added). The Breese court rejected the carrier's "double recovery" argument, relying on the analysis in Sunstate.
Both Sunstate and Breese are distinguishable from this case because in both of them, the funds against which the carrier sought to assert its lien were paid from a source clearly unrelated to the negligent tort-feasor. The uninsured motorist benefits in Sunstate were paid out of the employer's coverage, which had no connection to the negligent tort-feasor. In Breese, the funds were paid by the employee's attorney, also unconnected to the tort-feasor.
In this case, however, the obligation was assumed and paid by the Guaranty Fund as a covered claim solely because of the tort-feasor's insurer's insolvency. The Guaranty Fund was essentially a backup insurer, standing in the insolvent insurer's shoes, and its funds were thus "derived from" the negligent third party, just as the insolvent insurer's would have been.
We conclude that there is nothing in the Compensation Fund statute that precludes the assertion of a lien against funds paid by the Guaranty Fund. We reach a different conclusion when we turn to the Guaranty Fund statute.
THE GUARANTY FUND STATUTE PRECLUDES THE LIEN
Martinez next argues that the definition of "covered claim" found in A.R.S. section 20-661(3) precludes liens that arise pursuant to A.R.S. section 23-1023, the workers' compensation statute. Specifically, he argues that a "covered claim" does not include "any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise...." A.R.S. § 20-661(3) (Supp. 1988). The Compensation Fund's lien, he says, is an amount due an insurer "as subrogation recoveries or otherwise."
The Compensation Fund counters that it is not making a claim as defined in A.R.S. section 20-661(3), but is instead asserting a lien, which differs from a claim. It draws a distinction between its lien and the *384 "claim," which it says belongs to Martinez and exists only because of the tort-feasor's wrong and his insurer's insolvency.
The Compensation Fund relies on a Florida case, Sandrew Construction v. DeFourny, 515 So.2d 1351 (Fla. Dist. Ct. App.2d 1987), in which the Florida Court of Appeals held that a worker's compensation carrier could assert a lien against Florida's guaranty fund under facts very similar to those before us in this case. The Florida statute that defined claims covered by the guaranty fund was, in relevant part, identical to the Arizona statute. The injured worker argued that the lien was in the nature of a subrogation claim. The Florida court rejected this argument. It observed that if the injured employee had not filed suit against the tort-feasor, and had the compensation carrier done so, the carrier's claim would arise from subrogation and no lien would attach. The court drew a distinction between such a subrogation claim and a lien and relied heavily upon the clear policy of the workers' compensation statutes against allowing the injured party double recovery. It noted that allowing the compensation carrier to assert a lien against the guaranty fund prevented double recovery by the injured worker.
We choose not to follow the holding of the Florida court. First, in a different context, our supreme court has equated a compensation carrier's lien with subrogation rights. Chevron Chemical Co. v. Superior Court, 131 Ariz. 431, 641 P.2d 1275 (1982); see also Olivas v. United States, 506 F.2d 1158 (9th Cir.1974).
Second, and more importantly, even if the Compensation Fund's lien is not a subrogation claim, the Florida court in Sandrew Construction did not discuss in any depth, and seemingly gave no effect to, that portion of the Florida statute that excluded from the definition of "covered claim" amounts due any insurer as "subrogation recoveries or otherwise."[1] This same language, present in the Arizona statute, broadens the intent of the statute, and we do not believe that it can be ignored. The Compensation Fund is undisputably an "insurer," and even if the lien amounts are not due it as "subrogation recoveries," they are certainly due it "or otherwise." Thus they fall within the express exclusionary provisions of A.R.S. section 20-661(3).
Third, the crux of the Florida court's reasoning is the avoidance of double recovery to the injured worker. Again, however, the Florida court did not discuss, and gave no effect to, the Florida statute which provided that amounts payable to a claimant from the guaranty fund are to be reduced by any amount recovered under another insurance policy.[2] The Arizona statute has a somewhat similar provision which reads:
Any person having a claim against an insurer under any provision in an insurance policy which is also a covered claim shall be required to exhaust first all rights under such policy. Any amount payable on a covered claim pursuant to this article shall be reduced by the amount of such recovery under the claimant's insurance policy. A member insurer or other insurer, which pays such insurer's own policy, shall have no right of subrogation or recovery against the insured of an insolvent insurer.
A.R.S. § 20-673(A) (Supp. 1988).
The State Compensation Fund is "maintained for the purpose of insuring employers against liability for workers' compensation," A.R.S. section 23-981(A) (Supp. 1988); and workers are deemed to be "covered by insurance," A.R.S. section 23-1021(A). Thus, an injured worker who is covered by workers' compensation, who recovers against the person who injured him, and who has a claim against that person's insolvent insurer, falls within the provisions of A.R.S. section 20-673(A). He must look to the Compensation Fund for whatever *385 recovery is allowed, and the Guaranty Fund is entitled to reduce any payment to the injured person by the amount that person received from the Compensation Fund. Thus, there is no double recovery.
The Compensation Fund relies on Attorney General's Opinion I88-107, which concluded that the Guaranty Fund may not offset workers' compensation benefits received by a claimant against what it, the Guaranty Fund, owes that claimant. The attorney general concluded that the injured worker, in receiving compensation benefits, was not receiving a "recovery under the claimant's insurance policy" within the meaning of A.R.S. section 20-673(A). His rationale was as follows:
First, A.R.S. § 23-961 requires employers to secure workers' compensation for their employees. Absent an employer's compliance with A.R.S. § 23-961, the employer himself is liable to an employee for damages arising out of work-related injuries. A.R.S. § 23-907. See A.R.S. § 23-801; § 23-906. The liability covered by a workers' compensation insurance policy is that of the employer. The employer is obligated to secure the policy and pay the premiums. Furthermore, an employer may not deduct any portion of the premium from an employee's wage or salary. A.R.S. § 23-967. Thus, a workers' compensation insurance policy is the employer's policy and not the employee claimant's policy.
The Insurance Guarantee (sic) Fund is entitled to a set-off only for `recovery under the claimant's insurance policy.' A.R.S. § 20-673(A). Workers' compensation benefits are not a recovery under the employee-claimant's insurance policy, and therefore, no reduction in the amount of a covered claim by the Guarantee (sic) Fund is authorized by a claimant's receipt of benefits.
We are not persuaded by this analysis. As we have already observed, our statute, in another context, speaks of workers as being "covered by insurance." See A.R.S. § 23-1021(A). While it may be true that the policy insures the employer against his statutory liability to the employee, the employee is in the position of a named beneficiary of the policy. The policy exists for his protection as much as it does for the employer's, and we believe that it is proper to read the language of A.R.S. section 20-673(A) broadly so that Martinez would not be entitled to double recovery.
Moreover, this analysis is reinforced by the language we have previously emphasized in A.R.S. section 20-661(3):
Covered claim does not include any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise. .. .
Under the express language of A.R.S. section 20-661(3), Martinez's claim against the Guaranty Fund did not include any amount that, if recovered against a solvent insurer, would have been due to the Compensation Fund, an insurer, "as subrogation recoveries or otherwise." Thus, excised by section 20-661(3) from the damages for which Martinez could look to the Guaranty Fund for coverage were such amounts as he had already received from the Compensation Fund and for which, had there been a solvent insurer, the Compensation Fund could have expected reimbursement by lien.
It follows from this interpretation that the Guaranty Fund and Workers' Compensation statutes do not provide a double recovery for workers in the position of Mr. Martinez. Rather, those losses that are compensable under the workers' compensation act are intended to be paid once  by the workers' compensation carrier  and excluded from the losses for which the Guaranty Fund need be concerned. In this respect, we believe, the legislature demonstrated its intention that compensation carrier lien recovery yield to the overriding policy that limited Guaranty Fund coverage be reserved for losses uncompensated by any other insurance source.
Martinez has already settled his claim with the Guaranty Fund. It is unclear whether the agreement was made with reference to the Guaranty Fund's right under A.R.S. section 20-673(A) to reduce any recovery by the amount received from other insurers. Thus, it may be that Martinez *386 will receive a duplicate recovery to the extent of $1,254.14, which he received in workers' compensation benefits. The resolution we reach here may, however, affect negotiations between the Guaranty Fund and future claimants situated in Martinez's position.
The judgment of the trial court is reversed and this case is remanded with directions to enter judgment on the cross-motion for summary judgment filed by Martinez.
FIDEL and SHELLEY, JJ., concur.
NOTES
[1] Florida Statutes Annotated § 631.54(3) (1984).
[2] Florida Statutes Annotated § 631.61(1) (1984). The Florida statute and the Arizona statute are similar except that in Florida a person who makes a claim against the guaranty fund is not required to first assert all other claims he may have against other insurers. The Florida guaranty fund may, however, offset amounts payable under such insurance policies.