943 P.2d 793 (1997)
189 Ariz. 433
CLARK EQUIPMENT COMPANY, a Delaware corporation, Plaintiff-Appellee,
v.
ARIZONA PROPERTY AND CASUALTY INSURANCE GUARANTY FUND, a political subdivision of the Department of Insurance of the State of Arizona, Defendant-Appellant.
No. 1 CA-CV 95-0502.
Court of Appeals of Arizona, Division 1, Department D.
February 11, 1997.
Review Denied September 16, 1997.
*796 Snell & Wilmer, L.L.P. by Steven S. Guy and Scott D. Sherman, Phoenix, for Plaintiff-Appellee.
Surrano & Massey, P.C. by Charles J. Surrano, III, and Jeffrey R. Finley, Phoenix, for Defendant-Appellant.

OPINION
WEISBERG, Judge.
Appellant Arizona Property and Casualty Insurance Guaranty Fund (the Fund) appeals the trial court's judgment and award of costs and attorneys' fees entered in favor of Clark Equipment Company (Clark). We affirm.

FACTUAL AND PROCEDURAL HISTORY
On October 7, 1983, Richard Chavez was seriously injured in an accident involving a forklift manufactured by Clark. Chavez brought suit against Clark in Maricopa County (Chavez claim). On June 20, 1984, Lawson Dossey died as the result of an accident involving a Clark front-end loader. Dossey's survivors brought suit against Clark in Pima County (Dossey claim).
Both claims were covered under a liability insurance policy issued to Clark by CIGNA, which initially undertook the defenses. In May 1986, though, after Clark had exhausted the full amount of its aggregate coverage for the 1983/1984 policy year, CIGNA refused to provide any further coverage for the claims or for their defense.
Clark then looked to its next layer of liability coverage, which was provided by Integrity Insurance Company (Integrity). Clark notified Integrity of the Chavez and Dossey claims and complied with all conditions necessary to trigger Integrity's obligation as insurer. As part of its obligation, Integrity agreed to assume the defense costs.
However, on March 24, 1987, the New Jersey Superior Court declared Integrity to be insolvent and placed the company in liquidation proceedings. On March 31, 1987, the Arizona Department of Insurance notified the Fund of Integrity's insolvency and "formally invoke[d] Arizona's Property and Casualty Insurance Guaranty Fund law, A.R.S. § 20-661, et seq., in order to provide protection to Arizona residents who may have claims against this foreign insurer." The Fund appointed Frontier Adjusters (Frontier) to act as the Arizona claims administrator for the Integrity insolvency.
On September 21, 1987, Clark filed proofs of claim for the Chavez and Dossey claims with Integrity's New Jersey liquidator. Amended proofs of claim were filed October 5, 1987 and March 23, 1988. The proofs of claim reflected that the Dossey claim was closed but that the Chavez claim was not. Although the filing of a proof of claim with an insurance company's liquidator is deemed to be notice to the Fund, Ariz.Rev.Stat. Ann. (A.R.S.) § 20-665(C)(4), neither the Fund nor Frontier received actual notice of the claims at that time.
After Integrity's insolvency, Clark independently litigated both the Chavez and Dossey claims, paying its own defense and settlement costs. Clark obtained a favorable defense verdict after a jury trial of the Chavez claim. That judgment, however, was reversed by this court and remanded for a new trial. Prior to the new trial, Clark settled the claim for $510,000.00, which it considered to be a favorable settlement since Chavez had undisputed damages in excess of $10,000,000.00. Clark's unreimbursed defense costs related to the Chavez claim equalled the sum of $124,472.00. In addition, Clark had settled the Dossey claim for $15,000.00, and paid related unreimbursed defense costs in the amount of $5,078.00.
On February 16, 1988, the Fund received actual notice of the Chavez and Dossey *797 claims from a letter written to it by Clark's in-house counsel, Timothy Wright. Pursuant to the letter, Clark sought reimbursement of its defense and settlement costs for both the Chavez and Dossey claims. On April 20, 1988, Frontier adjuster Ben Maple wrote to Wright and asked for a summary of collateral source payments on the two claims, as well as the relevant policies, declarations, and endorsements. Clark forwarded both the CIGNA and Integrity policies to Frontier on May 3, 1988.
On May 8, 1989, Maple prepared a closing report for his file on these claims. He opined that the Fund was not responsible for the claims and that, in any event, adequate primary coverage existed. He did not, however, inform Clark that the claims were closed, and the Fund now admits that his conclusion regarding adequate primary coverage was in error.
The file was reopened in March 1990, when Frontier received additional claims materials from Integrity's liquidator. Maple reclosed the file on April 2, 1990, believing that the cases had been settled by a primary insurer. Again, Clark was not informed of the closure.
On June 27, 1991, David Field, another of Clark's in-house counsel, informed Maple that Clark had been unable to collect from other state guaranty funds, and asked for a determination of liability from the Fund. On August 2, 1991, Maple advised that the file was open and was being referred to the Fund attorneys. On October 10, 1991, Maple wrote to Field and requested additional information and added the following:
I finally heard from our attorney and he believes that the Arizona Guaranty Fund does not need to cover the claim being made by yourself on behalf of Clark Equipment Company. However, his opinion was based only on the information I was able to provide.
Field provided the requested information, and, on November 27, 1991, again requested a determination of the Fund's liability. Maple responded that the Fund's attorney would be contacting Field regarding the claims.
On January 14, 1992, Maple prepared an internal interim report for the file. He indicated that the Fund's counsel had given him a "preliminary response indicating there are several reasons why we may not have to pay" and said that, while he was waiting for a more "thorough opinion," the file would "definitely" be kept open "for sometime yet."
On May 2, 1992, another of Maple's interim reports showed that the Fund's attorney had not yet contacted him regarding the claims. On July 7, 1992, Michael Hanesworth, another in-house counsel for Clark, wrote to Maple. He said that, although Clark and Frontier had been corresponding since 1988 regarding the claims, Clark had "yet to receive either approval and payment, or a denial of the claims." He further indicated that Clark had not heard from the Fund's counsel and that he would like a written statement of Frontier's position with respect to the claims.
Maple prepared another internal interim report in which he stated, "Frankly, I do not think we have enough information yet from the insured to really truly consider this claim in all seriousness." On July 24, 1992, Maple noted in his file that he had received a letter from the Fund's counsel indicating that the statute of limitations had expired on any possible suit between Clark and the Fund regarding the Chavez and Dossey claims. The file was closed for a third time on August 18, 1992, again without notice to Clark.
On February 18, 1993, Clark's counsel wrote to Frontier demanding payment of its defense and settlement costs. If it received no response, Clark threatened that it would file suit. On July 16, 1993, the Fund's attorney wrote to Clark stating that the claims had been, "apparently, previously denied."
On July 19, 1993, Clark filed suit for breach of contract and declaratory judgment against the Fund, and the case proceeded to a bench trial. The Fund defended on the grounds that: 1) the statute of limitations had expired; 2) Clark had breached the cooperation clause of its Integrity policy; 3) Clark was precluded from recovery because it had not complied with A.R.S. section 12-821, the notice of claims statute for claims against the state; 4) any damage award must *798 be offset by any workers' compensation payments received by Chavez and the Dossey survivors; and 5) that its statutory liability limit of $99,900.00 included any defense fees and costs incurred by Clark.
Following trial, the trial court made the following findings:
1. Clark had submitted "covered claims" within the meaning of A.R.S. section 20-661(3);
2. The one-year statute of limitations for liability created by statute, contained in A.R.S. section 12-541, applies to the action;
3. The statute of limitations did not begin to run until the Fund's denial of coverage, which occurred on July 16, 1993;
4. The notice of claims statute, A.R.S. section 12-821, does not apply to this case;
5. The Fund did not avail itself of the six-month stay of proceedings provided in A.R.S. section 20-676 so that it could take part in the defense of either claim;
6. Clark breached the cooperation provisions of the Integrity policy;
7. The settlement amounts and defense costs for both the Chavez and Dossey claims were, nevertheless, reasonable and necessary;
8. The Fund was not substantially prejudiced by the breach and thus is not excused from paying its portion of the settlement and defense costs;
9. Equity requires that the Fund not pay for defense costs incurred in the Chavez claim from September 21, 1987 (the date the first proof of claim was filed with the Integrity receiver) until February 16, 1988 (the date that Frontier received actual notice of the pending litigation);
10. Clark is entitled to recover the following damages from the Fund:
a) the statutory limit of liability, $99,900.00, for the Chavez settlement,
b) unreimbursed defense costs incurred for the Chavez claim prior to the filing of the notice of claim and after the Fund received actual notice of the pending litigation,
c) $14,900.00 for settlement of the Dossey claim, and
d) unreimbursed defense costs in the amount of $5,078.00, incurred for the Dossey claim;
11. The Fund is not entitled to an offset of damages for money paid to Mr. Chavez by worker's compensation;
12. The Fund's liability for defense costs is not limited by the $99,900.00 indemnity cap in A.R.S section 20-667(B); and
13. Clark is the prevailing party and is entitled to its reasonable costs and attorneys' fees incurred in this action, pursuant to A.R.S. sections 12-341 and 341.01.
The trial court subsequently entered judgment for Clark in the amount of $395,606.96[1] and awarded it attorneys' fees and costs in the amount of $111,332.50.
The Fund now appeals, arguing that:
1. Clark's cause of action accrued "within a reasonable amount of time" after the filing of its original notice of claim and is now barred by the one-year statute of limitations;
2. Clark did not comply with the notice of claims statute, A.R.S. section 12-821;
3. Clark may not recover from the Fund since its payments to the claimants and the associated defense costs were voluntary;
4. Clark may not recover from the Fund because it failed to cooperate with the Fund in settling the claims;

*799 5. The Fund is entitled to an offset of damages for amounts paid by worker's compensation to Mr. Chavez;
6. The statutory liability cap of $99,900 includes amounts expended in defense of claims; and
7. The Fund is not liable for an award of costs and attorneys' fees pursuant to A.R.S. section 12-341.01.

DISCUSSION
The Fund was created by the legislature to assume the liability of insolvent insurers. Betancourt v. Arizona Property & Casualty Ins. Fund, 170 Ariz. 296, 298, 823 P.2d 1304, 1306 (App.1991). Upon an insurer's insolvency, the Fund is "deemed the insurer to the extent of its obligation on the covered claims[2] and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." A.R.S. § 20-667(C); see also Arizona Property & Casualty Ins. Guar. Fund v. Herder, 156 Ariz. 203, 205, 751 P.2d 519, 521 (1988); Betancourt, 170 Ariz. at 298, 823 P.2d at 1306.
The parties agree that Clark submitted "covered claims" within the meaning of the statute. Accordingly, at the time the Fund was notified of Integrity's insolvency, it was required to assume, within the limits set forth in A.R.S. section 20-667, Integrity's obligations to Clark.

I. Statue of Limitations
The trial court found that the proper limitations period for Clark's cause of action, a liability created by statute, was one year, see A.R.S. § 12-541(3), which began to run on July 16, 1993, when the Fund denied coverage of Clark's claims. The Fund, however, argues that the statute of limitations bars the cause of action because 1) Clark judicially admitted that the Fund had breached the policy as early as 1987, and 2) the cause of action must have accrued within a "reasonable amount of time" after Clark's first proofs of claim were filed. Either way, according to the Fund, since Clark did not file suit until July 19, 1993, the statute of limitation had expired. Clark, on the other hand, argues that the trial court applied the wrong statute of limitation,[3] but that, in any event, the limitation period does not bar its suit because its cause of action accrued on July 16, 1993. We need not decide which limitations period applies since we agree that it did not begin to run until July 16, 1993, only three days before Clark filed suit.
For a cause of action to accrue for statute of limitations purposes, "some event in the nature of a breach of contract must have occurred." Western Casualty & Sur. Co. v. Evans, 130 Ariz. 333, 336, 636 P.2d 111, 114 (App.1981). A judicial admission is
[a]n express waiver made in court or prepatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact, [and] has the effect of a confessory pleading, in that the fact is therefore to be taken for granted; so that the one party need offer no evidence to prove it and the other is not allowed to disprove it.
IX John H. Wigmore, Evidence § 2588 (1981). The Fund argues, citing Starkovich v. Noye, 21 Ariz.App. 324, 519 P.2d 77, vacated on other grounds, 111 Ariz. 347, 529 P.2d 698 (1974), that Clark is bound by a judicial admission, contained in its Rule 26.1 disclosure statement, that the Fund committed anticipatory breach as early as 1987 by failing to investigate, acknowledge, defend, or indemnify the claims. We disagree.
First, Clark's disclosure statement, alleged to contain the admission, does not appear in the documents that were filed with the trial court, and we have not been directed to where in the record the Fund made this argument below. The Fund's argument regarding Clark's admission is therefore *800 waived. See United States v. Globe Corp., 113 Ariz. 44, 51, 546 P.2d 11, 18 (1976).
Second, we do not agree that, in these circumstances, the disclosure statement constituted a judicial admission. The purpose of disclosure is not to act as a "confessory pleading," but to give each party adequate notice of what arguments will be made and what evidence will be presented at trial. See Ariz. R. Civ. P. 26.1(a), Court and Committee Cmts. to 1991 Amend. A party's first disclosure is not cast in stone; it may be amended, which Clark apparently did here.[4]See Ariz. R. Civ. Pro. 26.1(b)(2). Even a document which would otherwise act as a judicial admission would no longer have that effect if it is properly amended. We therefore conclude that Clark's disclosure statement is not a judicial admission.
We next consider whether Clark's cause of action accrued at some point between 1988 and 1991 because the Fund failed either to approve or disapprove Clark's covered claims. The Fund reasons that Clark should have been aware of a breach, and the consequent accrual of its cause of action, within "a reasonable amount of time" after the proofs of claim were filed. The dissent adds that the Fund's breach was clear in 1987 or 1988 when Clark was forced to provide its own defense. We, however, disagree.
A breach of an insurance contract generally occurs when the insurer denies the insured the relevant coverage. See Holt v. Utica Mut. Ins. Co., 157 Ariz. 477, 482, 759 P.2d 623, 628 (1988) (breach of contractual duty to defend occurs when insurer refuses to defend); Blutreich v. Liberty Mut. Ins. Co., 170 Ariz. 541, 544-45, 826 P.2d 1167, 1170-71 (App.1991) (statute of limitations on action to recover under uninsured motorist coverage begins to run when insurer refuses to pay claim); Evans, 130 Ariz. at 337, 636 P.2d at 115 (cause of action against insurer begins to run when insurer denies coverage). The rationale behind this rule is that the nature and extent of the breach, and the damages flowing from it, can be determined only after a claim has been definitively denied and negotiations between insurer and insured have ceased. See Ness v. Western Sec. Life Ins. Co., 174 Ariz. 497, 501, 851 P.2d 122, 126 (App.1992).
Although in some circumstances an "unreasonable delay in taking action after receiving notice of a claim may constitute a breach," Holt, 157 Ariz. at 483, 759 P.2d at 629, in others it may be construed as mere "corporate ineptitude." Id. In either event, the inference to be drawn from an insurer's failure to take action on a claim is left to the trier of fact, id., whose finding we will not disturb unless it is clearly erroneous and insupportable by any interpretation of the record below, see Board of Regents v. Phoenix Newspapers, Inc., 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).
Here, the trial court found that a breach did not occur until coverage was denied on July 16, 1993, when the Fund's counsel informed Clark that its claims had been, "apparently, previously denied." Until then, the Fund merely put Clark off, never advising whether the claims were approved or denied. The trial court therefore found that a breach did not occur until the Fund's attorney finally told Clark that its claims had been denied.
Notwithstanding, the dissent posits that the breach occurred in 1987 or 1988 when the Fund failed to investigate and defend Clark's claims. While we can agree that the dissent's interpretation of the relevant facts is plausible, that does not render the trial court's interpretation implausible, much less "clearly erroneous and insupportable." See id. In view of the Fund's failure to notify Clark of the various times the file was "closed," and its failure to definitively deny coverage,[5] the trial court did not abuse its *801 discretion.[6] Accordingly, we conclude that the Fund's breach of the insurance contract, and the accrual of Clark's cause of action against the Fund, occurred on July 16, 1993.

II. A.R.S. Section 12-821
The Fund argues that A.R.S. section 12-821 requires Clark to file a notice of its "claims against a public entity ... in the same manner as that prescribed in the Arizona Rules of Civil Procedure, Rule 4(D) within twelve months after the cause of action accrue[d]." A.R.S. § 12-821(A) (1992). Clark responds that no notice of claims statute applied when it filed suit. We agree with Clark.
The Fund's argument refers to the version of A.R.S. section 12-821 that was in effect in 1992. The Arizona Legislature repealed that version of A.R.S. section 12-821 and replaced it with one that applied only to personal injury actions. 1993 Ariz. Sess. Laws ch. 90, §§ 7-8. The new statute became effective on July 17, 1993 and Clark filed suit on July 19, 1993. At that time, no prior notice of claim against the state was required.[7] Accordingly, we hold that Clark was not required to file a notice of claim before bringing this action against the Fund.

III. Substantial Prejudice
Condition six of the Integrity policy required Clark to cooperate with Integrity in the defense or settlement of any claims. It further provided that any voluntary payment or assumption of obligation by Clark would be done at Clark's "own cost."[8] The trial court found that Clark had breached this condition, but that the Fund was not relieved from its obligations under the policy because it had not been "substantially prejudiced" by the breach. The Fund now asserts that the trial court erred in requiring a showing of substantial prejudice. It argues that, because of Clark's breach alone, it is freed from liability.[9] Further, in the event that a showing of substantial prejudice is required, the Fund argues that the trial court erred by finding none. We, however, agree with the trial court.
In Holt v. Utica Mutual Ins. Co., our supreme court discussed the conditions under which an insured's breach of a policy condition would constitute a defense to an action on the policy. See 157 Ariz. 477, 481, 759 P.2d 623, 627 (1988).
[T]o constitute a valid defense, the breach must be material, violating a provision reasonably necessary for the protection of the insurer, and it must substantially prejudice the insurer.

Id. (emphasis added). At issue in Holt were cooperation provisions similar to those in the instant caseboth required the insured to assist the insurer in the litigation of claims and both prohibited the insured from making any voluntary payments or admissions of liability.[10]
*802 Because cooperation provisions in an insurance contract are designed to "protect[ ] the insurer's right to a fair adjudication of the insured's liability [and to] prevent[ ] collusion between the injured person and the insured," they are necessary for the protection of the insurer. See id. at 483, 759 P.2d at 629. Accordingly, an insured's breach of a cooperation provision normally relieves an insurer of liability, but only if the insurer has been substantially prejudiced thereby. Id. at 483-84, 759 P.2d at 629-30. Whether an insurer has suffered substantial prejudice is a question for the trier of fact, id. at 484, 759 P.2d at 630, which may not be disturbed by this court unless it is clearly erroneous, see Board of Regents v. Phoenix Newspapers, Inc., 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).
Here, the trial court found that Clark's settlements and its related attorneys' fees and costs were "reasonable and necessary, made in good faith, and [were a] reasonable mitigation of Clark's damages." On appeal, the Fund acknowledges that it can "only speculat[e]" about any prejudice flowing from Clark's breach, but does assert, without saying how it arrived at the figure, that Clark's attorneys' fees exceeded by more than $20,000.00 those that the Fund itself would have incurred. The Fund further speculates that, if given the opportunity, it might have chosen to settle quickly for its maximum statutory exposure, thereby avoiding most, if not all, costs of defense. We do not find these arguments convincing.
First, the clear language of the Integrity policy, under the "Defense Provisions" heading, provides that the insured's obligation to defend ends only after the liability limit has been paid in satisfaction of "judgments or settlements." Accordingly, the Fund could not have simply tendered $99,900.00 and abandoned Clark to defend on its own. See Brown v. Lumbermens Mut. Casualty Co., 326 N.C. 387, 390 S.E.2d 150, 153-54 (1990); 7C John A. Appleman, Insurance Law and Practice § 4682 at 36-37 (1979 & Supp.1995). Second, $20,000.00 amounts to approximately fifteen percent of the unreimbursed defense costs and about five percent of the total defense costs for the Chavez claim alone. As the trial court is in the best position to determine whether those costs were "reasonable" or "substantial," we cannot say that its finding of no substantial prejudice is clearly erroneous. We therefore affirm.

IV. A.R.S. Sections 20-673(A) and 20-680
The Fund next argues that, pursuant to A.R.S. section 20-673(A),[11] it is entitled to offset the workers' compensation benefits received by Chavez against its obligations for that claim. It reasons that, since its maximum liability is $99,900.00, and since Chavez has received workers' compensation benefits in excess of $1.2 million, it owes nothing on the claim.
The Fund relies upon Martinez v. State Workman's Compensation Ins. Fund, 163 Ariz. 380, 788 P.2d 113 (App.1989), in which this court said that A.R.S. section 20-673(A) permits the Fund to reduce any damages payable to a claimant by the amount the claimant has received in workers' compensation benefits. Id. at 384-85, 788 P.2d at 117-18. Clark counters by pointing out that the relevant language in Martinez is only dicta and that the Fund is not entitled to an offset for two reasons: 1) workers' compensation benefits are specifically excluded from the effects of A.R.S. section 20-673(A) by A.R.S. section 20-680; and 2) permitting an offset would be contrary to the legislative intent evidenced in the Fund statutes. We agree with Clark.
We first note that the relevant language in Martinez was not essential to the resolution of that case and is therefore mere dicta. Martinez primarily dealt with the rights of a workers' compensation carrier; its analysis did not depend upon the rights of the Fund. Moreover, the court had no need to consider, *803 and in fact did not consider, what effect A.R.S. section 20-680 would have upon the offset provision of A.R.S. section 20-673(A).
A.R.S. section 20-680 provides, in part:
This article [creating the fund] shall apply to all kinds of insurance except life, title, surety, disability, credit, mortgage guarantee, worker's compensation and ocean-marine.
(Emphasis added.) Despite this clear language, the Fund argues, without providing authority, that A.R.S. section 20-680 is only an exemption from the administration of insolvencies, and not from the offset provisions of A.R.S. section 20-673. We disagree.
When statutory language is clear, it is conclusive and we apply it accordingly. See Siegel v. Arizona State Liquor Bd., 167 Ariz. 400, 402, 807 P.2d 1136, 1138 (App.1991). We find the language of A.R.S. section 20-680 to be both broad and unambiguous: the "article shall apply to all kinds of insurance except ... workers' compensation." (Emphasis added.) We therefore hold that, by operation of A.R.S. section 20-680, workers' compensation recoveries on claims that are also covered claims do not reduce the amount payable by the Fund on that covered claim.
We also note that the insurers who provide the types of insurance excluded by A.R.S. section 20-680 are excluded from providing assessments to the Fund as "member insurers." A.R.S. §§ 20-661(6), -666(A). The Fund pays its "costs, expenses and liabilities" from the assessments of the member insurers. See A.R.S. §§ 20-662, -666(A). If workers' compensation proceeds were allowed as an offset to Fund obligations, then, effectively, nonmember, exempt insurers would be financing those obligations.
Accordingly, we hold that A.R.S. section 20-673 requires an offset to Fund liability only when the other applicable insurance has not been excluded by A.R.S. section 20-680. Workers' compensation payments may not provide an offset.

V. A.R.S. Section 20-667(B)
The Fund next argues that 1) it is not liable for Clark's defense costs because it neither hired nor approved Clark's counsel pursuant to A.R.S. section 20-664(B)(2), and 2) in the event it is liable for Clark's defense costs, the recovery against it for each claim, including those defense costs, may not exceed $99,900.00. A.R.S. § 20-667(B). Clark responds that 1) the Fund is not relieved of its obligation for defense costs since it was not substantially prejudiced by Clark's retention of defense counsel, and 2) only the substantive claims are limited by the liability cap. We agree with Clark on both points.
First, Clark's failure to obtain the Fund's approval of its defense counsel does not relieve the Fund of its separate obligation, under the Integrity policy, to defend Clark. When the Fund was "deemed the insurer" on the Integrity policy, see A.R.S. § 20-667(C), it assumed all of the "rights, duties and obligations" of Integrity, id., including the obligation to defend.
Even though Clark may have incurred defense costs in breach of the insurance contract, the Fund is relieved from its policy obligation to defend only if it has been substantially prejudiced by the breach. Here, the trial court has determined that Clark's defense costs were reasonable and that the Fund was not substantially prejudiced thereby. Because substantial prejudice is a factual question, Holt v. Utica Mut. Ins. Co., 157 Ariz. 477, 483, 759 P.2d 623, 629 (1988), we may not substitute our judgment for that of the trial court, Board of Regents v. Phoenix Newspapers, Inc., 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991). We therefore conclude that the Fund is liable for Clark's defense costs.
Next, when considering whether Clark's costs of defense are limited by the liability cap, we are guided by the plain language of the Fund statutes and the Integrity policy. A.R.S. section 20-667(A) provides that the Fund is "obligated to the extent of covered claims." A "covered claim" is an "unpaid claim ... aris[ing] out of and... within the coverage of an insurance policy" that is assumed by the Fund. A.R.S. § 20-661(3). The Fund is obligated on the covered claim for amounts between $100.00 and $100,000.00. A.R.S. § 20-667(B). To the extent of that obligation, the Fund "shall *804 have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." A.R.S. § 20-667(C).
The Integrity policy provides that the insurer shall "pay on behalf of the insured all sums, as more fully defined by the term ultimate net loss, for which the insured shall become obligated to pay by reason of liability... arising out of personal injury." "Ultimate net loss" is "the amount of the principal sum ... actually paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable." The policy further provides that Integrity "shall in addition to the amount of ultimate net loss payable... defend any suit against the insured seeking damages on account of personal injury." (Emphasis added.)
Here, the claim that is within the coverage of the Integrity policy, termed the "covered claim" by A.R.S. section 20-661(3), is one for which Clark has "become obligated to pay by reason of liability ... arising out of personal injury." The settlement amounts for the Chavez and Dossey claims fit within this category. But under the policy, and "in addition to" the settlement amounts for "ultimate net loss," Integrity has the obligation to "defend any suit against [Clark] seeking damages on account of personal injury." Because A.R.S. section 20-667(C) requires the Fund to assume all "duties and obligations" of Integrity, including the duty and obligation to defend Clark, we conclude that the Fund's obligation to pay Clark's defense costs is in addition to the $99,900.00 liability cap set forth in A.R.S. section 20-667(B).
The dissent would resolve this issue differently by finding that A.R.S. section 20-661(3) requires that post-insolvency defense costs incurred by the insured be part of the covered claim. That statute provides:
"Covered claim" means an unpaid claim, including one for unearned premium, which arises out of and is within the coverage of an insurance policy to which this article applies.... Covered claim does not include any amount due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise nor shall it include any obligations of the insolvent insurer arising out of any reinsurance contracts nor shall it include attorney's fees or adjustment expenses incurred prior to the determination of insolvency.
The dissent reasons that, since pre-insolvency attorneys' fees are specifically excluded from the covered claim, post-insolvency fees must necessarily be included. We, however, do not believe that the statute requires that result.
When interpreting a statute, the primary objective is to "give effect to the legislative intent." State v. Superior Court, 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (App.1995). Where there is no explicit statutory language, we "look to other indicia of legislative intent." Id. Accordingly, since A.R.S. section 20-661(3) neither expressly includes nor excludes post-insolvency defense costs as part of the covered claim, we must consider the "subject matter, effects, consequences, and reason and spirit" of the law. Id.
The purpose of the Fund is to assume the liability of insolvent insurers. See Betancourt, 170 Ariz. at 298, 823 P.2d at 1306. The Department of Insurance has stated that the Fund is intended to "protect Arizona residents" who have claims against an insolvent insurer. The categories that A.R.S. section 20-661(3) excludes as not being part of a covered claim, such as preinsolvency attorneys' fees, are expenses of an insolvent insurer rather than an insured. That is consistent with the Fund's purpose to protect Arizona resident insureds, who alone may file claims against the Fund. Conversely, the protection of insurers and those employed by them is not the purpose of the Fund.
Since pre-insolvency attorneys' fees are always outside of the Fund's control, it is understandable that the Fund is not liable for such costs. But, when the Fund owes a defense, the costs are its responsibility. We see no reason to deny defense costs when they are reasonably incurred by the insured. Accordingly, when the Fund, by its failure to respond to a claim, forces the insured to provide its own defense, it ought not be permitted to reduce the amount of the covered claim by the subsequent defense costs of the insured.
*805 Were we to allow a contrary result, the Fund would have no incentive to provide any defense. It could merely ignore the insured when a claim is made, as it did here, and rest secure in the knowledge that, if a court eventually ordered it to accept the claim, it could not be for any amount greater than $99,900. This would be especially troubling because the Fund is not liable for the bad faith denial of a claim. See Wells Fargo Credit Corp. v. Arizona Property & Casualty Ins. Guar. Fund, 165 Ariz. 567, 572, 799 P.2d 908, 913 (App.1990).
We therefore conclude that the Fund is liable for its insured's reasonably incurred post-insolvency defense costs.

VI. A.R.S. Section 12-341.01 and Attorneys' Fees at Trial
The Fund next argues that the trial court's award of attorneys' fees and costs to Clark, pursuant to A.R.S. section 12-341.01, is improper. It reasons that, since fees and costs are not "covered claims" within the meaning of A.R.S. section 20-661(3), the trial court had no authority to impose an award of attorneys' fees and costs against it. This argument, however, has been waived. See United States v. Globe Corp., 113 Ariz. 44, 51, 546 P.2d 11, 18 (1976).
Nowhere below did the Fund argue that, in the event it was the unsuccessful party, it could not be held liable for an award of attorneys' fees and costs. Nor did the Fund object to the award after the trial court directed Clark to file a statement of attorneys' fees and costs.
Although, in its reply brief on appeal, the Fund has argued that this issue was not waived because it "was briefed, and discussed prior to the court's award of same," the only argument below regarding attorneys' fees was that the Fund was not liable for defense costs related to the Chavez claim because that total claim would then exceed the statutory liability cap of $99,900.00. See supra. § V. That argument is unrelated to whether, pursuant to A.R.S. section 12-341.01, Clark should be awarded its attorneys' fees and costs as a prevailing party, and does not preserve the issue on appeal. We therefore affirm the trial court's award of attorneys' fees and costs.

VII. Attorneys' Fees on Appeal
Clark, as the prevailing party, also asks for an award of its attorneys' fees and costs on appeal pursuant to A.R.S. section 12-341.01(A), which provides that, in "any contested action arising out of a contract, ... the court may award the successful party reasonable attorney's fees." The Fund responds that such an award cannot be made against it because 1) this action arises by virtue of statute, rather than contract, and 2) it is precluded by the Fund statutes. We, however, grant Clark's request.
We find that attorneys' fees are appropriate under A.R.S. section 12-341.01(A) because the complaint alleges, and the judgment is based upon, a breach of contract. See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4, 138 Ariz. 190, 192, 673 P.2d 934, 936 (App.1983). "In any contested action arising out of contract," A.R.S. § 12-341.01(A), allows an award of fees when a contract is the "cause or origin" of the dispute. Id. Here, the "contract was a factor causing the dispute." Id.
Without the insurance contract between Clark and Integrity, there would have been no dispute between Clark and the Fund. Clark's cause of action was for breach of the contract on which the Fund was "deemed the insurer." A.R.S. § 20-667(C). Subject to the limitations of A.R.S. section 20-667, the insurance contract defined the Fund's rights and obligations with respect to Clark. Clark brought suit to enforce those rights and the Fund sought to avoid its obligations using contractual defenses.
Even though the Fund was created by statute and has assumed Integrity's obligations because of its statutory duty, the essential nature of this action remains one sounding in contract. Moreover, our courts have recognized that an award of fees under A.R.S. section 12-341.01(A) is not precluded merely because an action combines two theories of recovery, one which allows a fee award and one which does not, so long as, "but for" the contract claim, there would be no liability. Ponderosa Plaza v. Siplast, 181 *806 Ariz. 128, 133, 888 P.2d 1315, 1320 (App. 1993).
Citing Wells Fargo Credit Corp. v. Arizona Property & Casualty Ins. Guar. Fund, 165 Ariz. 567, 799 P.2d 908 (App.1990), the Fund next argues that A.R.S. section 20-675(A) precludes it from paying any judgment or liability in excess of a "covered claim." That statute provides:
There shall be no liability on the part of, and no cause of action shall rise against, any member insurer, the board or its agents or employees, the director or the representatives of the director for any action taken in performance of their powers and duties pursuant to this article.
In Wells Fargo, this court held that A.R.S. section 20-675 immunized the Fund from tort claims, such as bad faith and misrepresentation, reasoning in part that the legislature had not provided a method for the Fund to charge its member insurers in order to fund such liabilities. 165 Ariz. at 572, 799 P.2d at 913. Wells Fargo did not, however, address the question of attorneys' fees arising out of an insurance policy dispute.
Liability for tort claims is dissimilar from liability under A.R.S. section 12-341.01(A). While tort recoveries are intended to compensate for harm intentionally or negligently inflicted by another, A.R.S. section 12-341.01(A) is intended to "mitigate the burden of the expense of litigation to establish a just claim" under contract. A.R.S. § 12-341.01(B). When any insurer, including the Fund, denies a "just claim" under an existing contract, it risks litigation with the insured and the possible imposition of a fee award.
We further disagree with the Fund's argument that it may not pay these expenses because such payments have not been specifically authorized by statute. We conclude that no specific authorizing statute is necessary.
Attorneys' fees, whether incurred on behalf of an insured or in the defense of a claim on an insurance contract, are one of the ordinary expenses of an insurer. A.R.S. section 20-664(B) clearly contemplates that the Fund will be involved in litigation, not just on behalf of an insured, but as a defendant in its own right. That statute provides, in pertinent part, that the Fund may:
1. Appear in, defend and appeal any action on a claim brought against the fund.
2. Employ or retain such persons as are necessary to handle claims and perform other duties of the Fund.
....
4. Sue and be sued.
....
6. Perform such other acts as are necessary or proper to carry out the intent of this article.
Although the Fund statutes refer to the Fund's payment of the expenses of handling claims, see A.R.S. §§ 20-664(A)(6), -666(A), and to expenses generally, see A.R.S. §§ 20-662(C), -664(A)(2),666(A), they do not specifically authorize the payment of any type of attorneys' fees by the Fund. Nonetheless, it would be absurd to suggest that the Fund is therefore prohibited from paying any attorneys' fees because they are not specifically authorized. Here the Fund, like any other entity involved in litigation over the terms of a contract, must expect that it may be liable for the prevailing party's attorneys' fees. Furthermore, unlike tort claims, the Fund is empowered to collect assessments from member insurers to pay the costs associated with "handling covered claims," A.R.S. § 20-666(A), which include payments for attorneys' fees pursuant to A.R.S. section 12-341.01(A).
Moreover, because the Fund, unlike other insurers, is immune from tort claims, Wells Fargo, 165 Ariz. at 567, 799 P.2d at 913, without exposure to A.R.S. section 12-341.01(A), the Fund would be able to shirk its responsibilities to claimants with impunity. There would be little incentive for it to pay, settle, or defend covered claims, absent a court order. This is certainly inconsistent with the Fund's purpose, as stated by the Arizona Department of Insurance, "to provide protection to Arizona residents who may have claims against [an insolvent] insurer."
In the absence of a specific prohibition, the Fund, like any other political subdivision, agency, or creature of statute, is not shielded from paying an award of attorneys' fees. *807 See New Pueblo Constructors v. State, 144 Ariz. 95, 111-12, 696 P.2d 185, 201-02 (1985) (attorneys' fees award against state is proper under A.R.S. section 12-341.01 where statutory language is broad enough to allow recovery against "all civil defendants" and no statute expressly precludes it); Maricopa County v. Maricopa County Mun. Water Conservation Dist. No. 1, 171 Ariz. 325, 332, 830 P.2d 846, 853 (App.1991) (attorneys' fees award against county proper under A.R.S. section 12-341.01(A)).
Accordingly, we find that the Fund is not precluded from paying an award of attorneys' fees. In our discretion, we grant Clark's request for attorneys' fees on appeal upon its compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CONCLUSION
The judgment of the trial court is affirmed.
GRANT, Judge, concurs.
NOYES, Judge, Dissenting.
I respectfully dissent on two issues.
Statute of Limitations: The trial court held that the applicable limitations period is one year because Clark's claim against the Fund was based "upon a liability created by statute." See A.R.S. § 12-541(3) (1992). I agree. Clark's claim is based on the statutes which created the Fund and defined its obligations. Where the trial court and the majority err, in my opinion, is in concluding that the limitations period began running in 1993, when the Fund issued an "unequivocal denial" of Clark's claim. As I see it, that denial merely formalized breaches of duty which the Fund had made manifest since at least 1988; in fact, the "unequivocal denial" which Clark solicited from the Fund in 1993 was based, in part, on the running of the statute of limitations.
The trial court stated that the statute of limitations began to run upon "either ... an unequivocal denial of the claim by the Guaranty Fund or a pellucid anticipatory denial (breach) by the Fund." I agree. The Fund's duty to investigate and defend the Chavez and Dorsey claims against Clark arose in 1987, when the Fund received statutory notice of those claims, or perhaps not until 1988, when the Fund received actual notice of those claims. By the time it filed suit in 1993, then, Clark had known for about five years that the Fund was, at a minimum, in breach of its duties to investigate and defend Clark. Clark does not dispute these facts; Clark even alleges these facts in its Complaint:
10. Integrity breached its agreement with Clark when it stopped paying Clark's defense costs and expenses in late 1986 due to financial problems.
...
16. Although the Fund had notice of the Chavez and Dossey cases by at least September 21, 1987, the Fund failed to act on said claims or to perform any of its obligations to investigate, defend and indemnify Clark. The Fund also did not take a final position on the claims until July 16, 1993 when, through its attorney, it formally denied any liability to Clark.
24. The Fund has breached its contractual duties to Clark. Specifically, the Fund was required to defend and indemnify Clark. The Fund, however, failed to do so in a timely manner and is therefore liable for the defense costs and expenses paid by Clark. The Fund is also liable for amounts paid by Clark in settlement of the Chavez and Dossey cases, up to the statutory limit per claim of $99,900.00.
The Fund's breach of the duties to investigate and defend were "pellucid" notice to Clarkbeginning in 1987 or 1988that the Fund was not going to investigate and defend and that Clark was on its own in that regard. That was fine with Clark, who wanted to and did investigate and defend the Chavez and Dossey claims with its own attorneys and without control by or accountability to the Fund. The Chavez claim exposed Clark to damages in the $10-20 million range, which helps explain Clark's failure to look to the Fund (and its $99,900 limit) until Clark's privately-retained attorneys had controlled and resolved the Chavez claim.
The trial court found that Clark, beginning in 1987, breached its duty to cooperate with the Fund by failing to provide the Fund with *808 "immediate notice" of the status of the litigation and its retention of Snell & Wilmer, and related matters. The record is therefore clear that, beginning in 1987, the Fund essentially ignored Clark, Clark essentially ignored the Fund and they each accepted the breaches by the otheruntil 1993, when Clark made the demand which resulted in judgment against the Fund for about $.5 million. I think the Fund has the correct legal argument here and that, because the Fund's breach of duty to Clark was "pellucid" before 1992, Clark's 1993 lawsuit was time-barred. I agree that the Fund has not shown much prejudice from Clark's failure to cooperate; but, from 1987 on, Clark had sufficiently clear notice of the Fund's breaches of duty that Clark needed to file suit well before 1993 to preserve its right to complain about those breaches.
Unreimbursed Defense Costs (attorneys' fees): The majority affirms the trial court's award to Clark of $119,844 in unreimbursed attorneys' fees and costs in defending the Chavez claim. This issue is moot if Clark's lawsuit is time-barred, but I will address it.
If the Fund had been asked to employ attorneys to represent Clark, the Fund could have done so and could have paid fees to those attorneys pursuant to A.R.S. section 20-664(B)(2), which authorizes the Fund to "[e]mploy or retain such persons as are necessary to handle claims and perform other duties of the fund." But Clark did not ask the Fund to employ attorneys in defense of Clark; instead, Clark employed and paid Snell & Wilmer (and others) on its own. Only in 1993, after Clarks' attorneys had resolved the Chavez and Dossey claims, did Clark demand (through those same attorneys) that the Fund pay "unreimbursed defense costs."
Clark's claim for "unreimbursed defense costs" was not authorized by section 20-664(B)(2) because the Fund did not employ the attorneys who generated those costs. This means that Clark's claim for "unreimbursed defense costs" must be based on the theory that these costs are part of the Chavez "covered claim" within the meaning of A.R.S. section 20-661(3). I agree with that theory. The statute excludes "attorney's fees or adjustment expenses incurred prior to the determination of insolvency," which means that the statute impliedly allows a "covered claim" to include post-insolvency fees and costs incurred by privately-retained attorneys. See A.R.S. § 20-661(3). The "unreimbursed defense costs" awarded to Clark for the Chavez claim were post-insolvency.
Because Clark's "unreimbursed defense costs" are part of the Chavez "covered claim," those fees must count against the Fund's statutory limit of $99,900 per covered claim. See A.R.S. § 20-667(B) (providing that the fund is obligated for "only that amount of each covered claim which is in excess of one hundred dollars and is less than one hundred thousand dollars"). Therefore, assuming that Clark's Complaint was timely, Clark has been awarded $119,844 more (plus interest) on the Chavez claim than the statute allows.
I respectfully conclude that, if the judgment is not reversed on statute of limitations grounds, it should be remanded with directions to reduce the Chavez award to $99,900 (plus interest).
NOTES
[1] The breakdown of the total judgment against the Fund for the Chavez and Dossey claims was as follows:

 $ 99,900 Statutory maximum settlement
 amount for Chavez
 $119,844 Unreimbursed defense fees and
 costs for Chavez ($124,472
 $ 4,628 [the amount excluded by
 the trial court])
 $ 14,900 Settlement amount for Dossey
 $ 5,078 Unreimbursed defense fees and
 costs for Dossey
 $155,885 Prejudgment interest at 10% per
 annum simple interest from the
 date of each expenditure
 _________
$395,607 Total judgment

[2] The Fund's obligation on a covered claim is not "absolutely coextensive" with that of the insolvent insurer. The Fund is liable only for claims that exist within a certain time period relative to the insolvency, A.R.S. § 20-667(A), and for dollar amounts greater than $100 and less than $100,000, A.R.S. § 20-667(B). See Betancourt, 170 Ariz. at 298, 823 P.2d at 1306.
[3] Clark asserts that the correct limitation period for claims on a foreign contract is four years. See A.R.S. § 12-544(3).
[4] Although Clark's notice of amended disclosure is included in the record, the amended disclosure statement is not.
[5] Although the Fund characterizes its October 10, 1991 letter as a denial, the full text of the letter, especially when considered in the context of its later interim reports to the file, indicates that the Fund did not yet consider the claims to have been denied.
[6] Moreover, restricting a trial court's latitude would place insureds in an untenable position; upon an insurer's failure to approve or deny a claim, the insured would be required to simultaneously assume its own defense and initiate a declaratory judgment action against the insurer.
[7] The Arizona legislature has subsequently amended A.R.S. section 12-821 again and it now applies to "[a]ll actions against a public entity." See 1994 Ariz. Sess. Laws ch. 162, § 1.
[8] Condition six of Clark's Integrity policy reads, in part:

6. ASSISTANCE AND COOPERATION OF THE INSURED
The insured shall cooperate with [Integrity] and with the underlying insurers as required by the terms of the underlying insurance and, upon [Integrity's] request, assist in making settlements in the conduct of suits.... The insured shall not voluntarily make any payment, assume any obligation or incur any expense except at his own cost.
[9] The Fund also argues that Clark violated its statutory duty to cooperate, set out in A.R.S. section 20-672(A). But, since the Fund concedes that Clark's duties under condition six of the policy and A.R.S. section 20-672(A) are identical, the statutory duty does not merit separate analysis.
[10] The cooperation clause in Holt read, in part,

The insured shall cooperate with [the company] and at [the company's] request ... shall assist ... in the conduct of suits and defense thereof. The insured shall not, except at [its] own cost, make any admission of liability ... assume any obligation or incur any expenses without the written consent of [the company].
Id. at 483, 759 P.2d at 629.
[11] A.R.S. section 20-673(A) provides, in pertinent part:

Any person having a claim against an insurer under any provision in an insurance policy which is also a covered claim shall be required to exhaust first all rights under such policy. Any amount payable on a covered claim pursuant to this article shall be reduced by the amount of such recovery under the claimant's insurance policy.